**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GEORGE HENGLE, SHERRY
BLACKBURN, WILLIE ROSE, ELWOOD
BUMBRAY, TIFFANI MYERS, STEVEN
PIKE, SUE COLLINS, LAWRENCE
MWETHUKU, *on behalf of themselves and*
*all individuals similarly situated*,

     Plaintiffs,

v.

SCOTT ASNER, JOSHUA LANDY,
RICHARD MOSELEY, JR., GOLDEN
VALLEY LENDING, INC., SILVER
CLOUD FINANCIAL INC., MOUNTAIN
SUMMIT FINANCIAL, INC., MAJESTIC
LAKE FINANCIAL, INC., and UPPER
LAKE PROCESSING SERVICE, INC.,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:19-cv-250-REP

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS SCOTT ASNER AND JOSHUA LANDY'S**
**<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

STANDARD OF REVIEW ................................................................................................. 7

ARGUMENT ....................................................................................................................... 8

I.      Plaintiffs' Claims Against Asner and Landy Are Untimely. ............................... 8

II.     Plaintiffs' State Law Claims Do Not State A Claim And Fail As A Matter Of
        Law. ...................................................................................................................... 11

        A.      Plaintiffs' Claims Fail Under Virginia's Active Participation Doctrine. .............. 11

        B.      Plaintiffs Fail To Adequately Allege A Violation Of Virginia Usury Law. .......... 12

        C.      Plaintiffs Fail to Allege That Asner Or Landy Was Unjustly Enriched. .............. 15

III.    Plaintiffs' Complaint Fails To State A RICO Claim. ......................................... 18

        A.      Plaintiffs Do Not Allege That Asner or Landy Collected Unlawful Debt. ............ 19

        B.      Plaintiffs' Claims Must Be Dismissed For Lack Of Allegations Related To
                Any Participation In The Alleged Enterprise In The Last Four Years. ................. 20

        C.      Plaintiffs Fail To State A RICO Claim Against Asner Or Landy Even With
                Respect To Pre-August 2014 Alleged Conduct. .................................................. 20

                1.      Under § 1962(b) Plaintiffs Have Not Pled That Asner Or Landy
                        Acquired An Interest In Or Maintained Control Over The Alleged
                        Enterprise *Through* Unlawful Collection Of Debt. .................................. 21

                2.      Under § 1962(c), Plaintiffs Have Not Pled That Asner Or Landy
                        Participated In the Conduct Of The Alleged Enterprise's Affairs. ............ 23

                3.      Under § 1962(c) and § 1962(d), Plaintiffs Have Not Pled That Asner
                        Or Landy Associated With The Alleged Enterprise Or Conspired
                        With It. .................................................................................................. 25

IV.     The Court Lacks Personal Jurisdiction Over Asner And Landy. ....................... 27

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

CASES

*Agency Holding Co. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143 (1987) ...............................9

*In re American Honda Motor Co., Dealerships Relations Litigation*, 941 F. Supp. 528 (D. Md. 1996) ........................................................................................................24

*Andrews v. Ring*, 585 S.E.2d 780 (Va. 2003) ............................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................7

*Brown Manufacturing Corp. v. Alpha Lawn & Garden Equipment, Inc.*, 219 F. Supp. 2d 705 (E.D. Va. 2002) ........................................................................................12

*Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809 (E.D. Va. 2015) .......................................18

*California v. Arizona*, 440 U.S. 59 (1979) ..................................................................................28

*Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989) .........................................................................27

*Dahlgren v. First National Bank of Holdrege*, 533 F.3d 681 (8th Cir. 2008) .............................25

*Dawavendewa v. Salt River Project Agriculture Improvement & Power District*, 276 F.3d 1150 (9th Cir. 2002) ........................................................................................28

*East West, LLC v. Rahman*, 873 F. Supp. 2d 721 (E.D. Va. 2012) ...............................................8

*ePlus Technology, Inc. v. Aboud*, 313 F.3d 166 (4th Cir. 2002) ..................................................27

*ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir. 1997) .............................................27

*Firestone v. Wiley*, 485 F. Supp. 2d 694 (E.D. Va. 2007) ...........................................................15

*Giarratano v. Johnson*, 521 F.3d 298 (4th Cir. 2008) ..................................................................8

*Gibbs v. Haynes Investments, LLC*, 368 F. Supp. 3d 901 (E.D. Va. 2019), *appeal docketed*, No. 19-1434 (4th Cir. Apr. 23, 2019) ........................................ 14, 18, 19-20, 21, 22

*Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir. 2016) .................................13

*Goren v. New Vision International, Inc.*, 156 F.3d 721 (7th Cir. 1998) ........................................24

*Greenberg v. Commonwealth ex rel. Attorney General of Virginia*, 499 S.E.2d 266 (Va. 1998) ..................................................................................................13, 14

*Hyundai Emigration Corp. v. Empower-Visa, Inc.*, No. 1:09-CV-124, 2009 WL
10687964 (E.D. Va. July 2, 2009) ..................................................................15, 16

*Hyundai Emigration Corp. v. Empower-Visa, Inc.*, No. 1:09-CV-124, 2009 WL
10687986 (E.D. Va. June 17, 2009)..........................................................................16

*Lismont v. Alexander Binzel Corp.*, No. 2:12-cv-592, 2013 WL 6095461 (E.D. Va.
Nov. 18, 2013) ............................................................................................................9

*McKoy v. Norfolk Redevelopment & Housing Authority*, No. 2:02-CV-268, 2002
WL 31953782 (E.D. Va. July 12, 2002), *aff'd*, 46 F. App'x 715 (4th Cir.
2002) ...................................................................................................................... 7-8

*Michigan Mutual Insurance Co. v. Smoot*, 183 F. Supp. 2d 806 (E.D. Va. 2001) ..........................8

*NCNB National Bank of North Carolina v. Tiller*, 814 F.2d 931 (4th Cir. 1987),
*overruled on other grounds by Busby v. Crown Supply, Inc.*, 896 F.2d 833 (4th
Cir. 2002) ..................................................................................................................25

*Pathak v. Trivedi*, 61 Va. Cir. 572 (2001) ..........................................................................8

*Potomac Electric Power Co. v. Electric Motor & Supply, Inc.*, 262 F.3d 260 (4th
Cir. 2001) ....................................................................................................................9

*Prototype Productions, Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691 (E.D. Va. 2012) .......................27

*Reves v. Ernst & Young*, 507 U.S. 170 (1993)..........................................................23, 25

*Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144 (4th Cir. 2012)................................................15

*Salinas v. United States*, 522 U.S. 52 (1997)................................................................26

*Schmidt v. Household Finance Corp.*, 661 S.E.2d 834 (Va. 2008) ...............................................15

*Solomon v. American Web Loan*, No. 4:17CV145, 2019 WL 1320790 (E.D. Va.
Mar. 22, 2019)...............................................................................22, 24, 25, 26

*Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d
1062 (E.D. Va. 2002) ................................................................................................11

*Taylor v. Bettis*, 976 F. Supp. 2d 721 (E.D.N.C. 2013), *aff'd*, 693 F. App'x 190 (4th
Cir. 2017) ..................................................................................................................24

*Tire Engineering & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682
F.3d 292 (4th Cir. 2012) ...........................................................................................27

*Toucheque v. Price Brothers Co.*, 5 F. Supp. 2d 341 (D. Md. 1998) ............................... 21-22, 23

*United States v. Mouzone*, 687 F.3d 207 (4th Cir. 2012)............................................................26

*Virginia Polytechnic Institute & State University v. Prosper Financial, Inc.*, 732 S.E.2d 246 (Va. 2012)................................................................................................13

*In re XE Services Alien Tort Litigation*, 665 F. Supp. 2d 569 (E.D. Va. 2009) ........7, 9, 21, 22, 23

*Zambrano v. HSBC Bank USA, N.A.*, No. 1:09-cv-996, 2009 WL 8753322 (E.D. Va. Nov. 9, 2009), *aff'd*, 442 F. App'x 861 (4th Cir. 2011)....................................8

**STATUTES**

18 U.S.C. §§ 1961-1968 ............................................................................................3

18 U.S.C. § 1962(b) ...............................................................................18, 19, 20, 21

18 U.S.C. § 1962(c) ..................................................................18, 19, 20, 21, 23, 25

18 U.S.C. § 1962(d) ...............................................................................19, 20, 21, 25

Va. Code § 6.2-305(A)....................................................................................9, 13, 14

Va. Code § 6.2-1541(A)...........................................................................................12

Va. Code § 6.2-1541(B)...........................................................................................12

**OTHER AUTHORITIES**

Complaint, *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461 (E.D. Va. June 22, 2017), ECF No. 1 ..................................................................................7, 14, 17

Fed. R. Civ. P. 8(a)(2).................................................................................................7

Fed. R. Civ. P. 11.....................................................................................................10

Notice of Voluntary Dismissal, *Consumer Financial Protection Bureau v. Golden Valley Lending*, No. 17-cv-2521 (D. Kan. Jan. 18, 2018), ECF No. 101 ...................1

Order Granting Tribal Defendants' Motion to Dismiss in Part, *Williams v. Big Picture Loans*, No. 3:17-cv-461 (E.D. Va. Mar. 12, 2018), ECF No. 117 ............................11

Order Denying Defendant Martorello's Motion to Dismiss, *Williams v. Big Picture Loans*, No. 3:17-cv-461 (E.D. Va. Mar. 12, 2018), ECF No. 119......................................14, 17

Tribal Defendants' Brief in Support of Motion to Dismiss, *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461 (E.D. Va. Sept. 29, 2017), ECF No. 25 ...................................10

Defendants Scott Asner and Joshua Landy respectfully submit this memorandum in support of their motion to dismiss Plaintiffs' claims. As discussed in the motion to compel arbitration, filed in conjunction with this motion, the Court should compel the parties to engage in arbitration, forego a decision on the motions to dismiss with respect to any Plaintiff who agreed to arbitration, and stay the case with respect to any other Plaintiff. In the event that the Court denies the motion to compel arbitration and/or elects not to stay the case, the Court should dismiss all claims against Defendants Asner and Landy for the reasons set forth herein.

## INTRODUCTION

At first glance, this case looks like several other lawsuits filed within this district in recent years. Indeed, many of the Plaintiffs who bring this case, the lawyers who represent them, and the allegations in the Complaint have appeared in those lawsuits. Large parts of the Complaint focus on what *other* tribal lenders and *other* individuals have done—not what the Native American tribe in this case did and certainly not what Asner or Landy did. As the Tribal Defendants' Motion to Dismiss demonstrates, there are significant differences between the tribal lenders in this case and the tribal lenders in other cases brought in this district.[1]

But detailed allegations about what other individuals and wholly different tribal lenders may have done cannot save the dearth of allegations related to Asner and Landy. Nor can broad-brush allegations about "Defendants" or "non-tribal outsiders," without specific reference to Asner and Landy, rescue Plaintiffs' claims. At bottom, the Complaint alleges little more than that one of Asner or Landy signed some paperwork five years ago, supervised employees providing call center services to the tribal lenders, and had some partial and indirect ownership share in some companies

---

[1] Among the many differences is that the CFPB voluntarily dismissed its case against these Tribal Defendants. Notice of Voluntary Dismissal, *CFPB v. Golden Valley Lending*, No. 17-cv-2521 (D. Kans. Jan. 18, 2018), ECF No. 101.

that may have owned an interest in some unspecified loans—not that they made loans to the Plaintiffs or had any specific role in managing or controlling the ill-defined "enterprise" referenced in the Complaint.

Indeed, the only specific allegations against Asner and Landy compel dismissal here: Plaintiffs allege in the Complaint that Asner and Landy sold whatever interest (which is described as "indirect" and partial) they may have had in entities that did business with the Tribal Defendants almost five years ago. The Complaint makes no allegations about any conduct of Asner or Landy after that alleged sale in August of 2014. Accordingly, and as discussed further below, Plaintiffs' claims suffer from one of two time-related defects. One, they are stale because they are beyond the statutes of limitations. *See infra* Part I. Or two, as may be true for most Plaintiffs, they have nothing to do with Asner and Landy because such Plaintiffs borrowed money after Asner and Landy ceased—based on Plaintiffs' own allegations—to be involved in the operation of the businesses. *See id.*

There are multiple other reasons to dismiss the Complaint against Asner and Landy as well. The Virginia state law claims (unjust enrichment and usury) fail for a host of reasons, not least of which is there is no allegation in the Complaint that either Asner or Landy made a loan to anyone. *See infra* Part II. The RICO counts, likewise, must be dismissed because of the paucity of allegations related to Asner and Landy, including a lack of more than conclusory allegations as to their involvement in the management and control of the alleged enterprise. *See infra* Part III. And Plaintiffs have not adequately alleged a basis for personal jurisdiction over Asner and Landy. *See infra* Part IV.[2]

---

[2] Defendants Asner and Landy adopt the arguments made by the Tribal Defendants in their motion to dismiss. In the event the Court dismisses claims against the Tribal Defendants, it should dismiss claims against Asner and Landy.

## BACKGROUND

Plaintiffs, eight Virginia residents, each entered into a Consumer Loan and Arbitration Agreement with a lending company owned and operated by the Habematolel Pomo of Upper Lake ("Tribe"), a federally recognized Indian Tribe.  Compl. ¶¶ 2, 9-16.  The companies are Defendants Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Mountain Summit Financial, Inc., and Majestic Lake Financial, Inc.—four lending portfolio companies that receive operational support from Defendant Upper Lake Processing Services, Inc. a lending operations center company (collectively the "Tribal Defendants").  *Id.* ¶¶ 2, 21-25

According to Plaintiffs, the loans violate Virginia law because they are usurious.  *Id.* ¶¶ 1, 5-6.  On that basis, Plaintiffs assert claims on behalf of themselves and putative classes of Virginia borrowers for alleged violations of state and federal law.  *Id.*  Plaintiffs contend that the Tribal Defendants were subject to, yet failed to comply with, Virginia law governing licensing and interest rates.  *Id.* ¶¶ 152-162.  Plaintiffs claim that the loans are therefore void and unenforceable. *Id.* ¶¶ 163-173.  Plaintiffs also allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, in connection with the lending operation. Compl. ¶¶ 118-151.

Defendants Scott Asner and Joshua Landy are not tribal lenders.  The Complaint does not allege that Asner or Landy owns, controls, manages, operates, or works for the Tribal Defendants. Nor does the Complaint allege that Asner or Landy issued a loan to any of the Plaintiffs or collected a single loan payment from any of them.  *See id.* ¶¶ 104-11 (listing each Plaintiff's respective lender).

Though the Complaint in various places alleges that Asner and Landy were associated with specific companies, including National Performance Agency, LLC ("NPA"), "which appear to

have been indirectly owned, in part, by Defendants Landy and Asner" (*id*. ¶ 3; *see also id*. ¶¶ 63-69), those companies were sold to the Tribe nearly five years ago, in August 2014. *Id*. ¶¶ 3-5, 87-90. According to Plaintiffs, the Tribe absorbed the operations, facility, and employees of the predecessor companies. *Id*. ¶¶ 4, 92-93. The Complaint identifies specific individuals who allegedly have operated the tribal lending operations since the 2014 sales (Shawn Hashmi and Norvel Crawford). *Id*. ¶ 92. But the Complaint does not allege any ongoing role or continued involvement by Asner or Landy. And, critically, the Complaint does not allege that any of the Plaintiffs actually borrowed from or made payments to the companies that Asner and Landy allegedly owned and/or managed prior to the 2014 sales.

Plaintiffs nonetheless level the same claims against Asner and Landy that they assert against the Tribal Defendants—the actual companies from which the Plaintiffs borrowed. Plaintiffs try to paint Asner and Landy with the same brush, using vague and conclusory allegations—for example, that "*Defendants* marketed, initiated, and collected usurious loans"—without actually alleging how Asner or Landy purportedly took part. *Id*. ¶ 95 (emphasis added); *see also id*. ¶¶ 96, 101-112, 114, 116-117.

After eliding over the obvious differences between Asner and Landy on the one hand and the Tribal Defendants on the other hand (not to mention differences between these Tribal Defendants and those in other cases), Plaintiffs then lump Asner and Landy into a civil RICO conspiracy. Plaintiffs broadly aver that Asner and Landy "conducted and/or participated in the affairs of [an] enterprise through the unlawful collection of debt," without providing factual allegations about how they joined an enterprise, what operational, managerial, or controlling role they had in it, or how they can possibly remain members nearly five years after the sales of companies they allegedly, indirectly, partially owned. *See id*. ¶ 126. Plaintiffs also assert—in

similarly broad fashion—that Asner and Landy, along with other defendants, "acquir[ed] and maintain[]ed interest in and control of the enterprise . . . by providing a significant portion of the capital used to make the loans and grow the portfolios of the enterprise," *id.* ¶ 148, yet their factual allegations about capital provided to the Tribal Defendants only identify Defendants Richard Moseley, Jr. and RM Partners, LLC as investors—not Asner or Landy, *id.* ¶¶ 19-20.

In fact, the *only* allegations specific to Asner or Landy in the entire 172-paragraph Complaint are—verbatim—the following:

- Between 2012 and 2014, the vast majority of the operations and profits [of the Tribal Defendants] were received by National Performance Agency, LLC and other companies, which appear to have been indirectly owned, in part, by Defendants Landy and Asner. *Id.* ¶ 3.

- Defendant Joshua Landy ("Landy") is a natural person and resident of Kansas. Landy is one of the former owners of National Performance Agency. *Id.* ¶ 17.

- Defendant Scott Asner ("Asner") is a natural person and resident of Kansas City, Missouri. Asner is one of the former owners and managers of the National Performance Agency, who signed the documents to effectuate the merger between National Performance Agency and Clear Lake TAC G, as well as the merger of several companies into National Performance Agency immediately prior its [sic] merger with Clear Lake TAC G. Upon information and belief, Asner is also a former owner and manager of Nagus Enterprises, and Asner signed the documents to effectuate the merger between Nagus Enterprises and Clear Lake TAC S. Upon information and belief, Asner is also a former owner and manager of Edison Creek, and Asner signed the documents to effectuate the merger between Nagus Enterprises and Darden Creek, which occurred on the same day and following the merger between Darden Creek and Edison Creek. *Id.* ¶ 18 (citations omitted).

- Upon information and belief, National Performance Agency, Edison Creek, Nagus Enterprises, and Cobalt Hills were owned and operated by Scott Asner, Josh Landy, and other individuals currently unknown to Plaintiffs. *Id.* ¶ 63.

- For example, National Performance Agency's Annual Report for 2012 was signed by Joshua Landy as a "member" of National Performance Agency. *Id.* ¶ 64.

- Similarly, on February 7, 2013, Landy contributed $5,000 to the Online Lender's Association and listed his occupation as National Performance Agency. *Id.* ¶ 65.

- As one of his responsibilities, Landy oversaw the dozens of employees located at 7201 W. 110th Street, Suite 210, Overland Park, Kansas 66210.  *Id.* ¶ 66.

- Landy was also a signatory on a bank account held by National Performance Agency, as well as separate bank accounts held by Edison Creek, Nagus Enterprises, and Cobalt Hills—each of which was wrapped up in the merger.  *Id.* ¶ 67.

- Similarly, Asner signed multiple documents on behalf of National Performance Agency, including: (1) a change of registered agent dated July 1, 2014, (2) its cancellation of authority to do business in Kansas dated June 27, 2014, (3) the certificate of merger between National Performance Agency and Cobalt Hills, (4) the certificate of merger between National Performance Agency and American Consumer Credit, (5) the certificate of merger between National Performance Agency and Community Credit Services, (6) the certificate of merger between National Performance Agency and Dynamic Marketing, and (7) the certificate of merger dated August 20, 2014, between National Performance Agency and National Opportunities Unlimited.  *Id.* ¶ 68.

- Asner also signed multiple documents on behalf of Nagus Enterprises, including the merger agreements described above.  *Id.* ¶ 69.

- As alleged above, Defendants Scott Asner, Joshua Landy, Golden Valley, Silver Cloud, Mountain Summit, Majestic Lake, and ULPS conducted and/or participated in the affairs of the enterprise through the unlawful collection of debt.  *Id.* ¶ 126.

- As alleged above, Defendants Asner, Landy, Moseley, and RM Partners violated § 1962(b) of RICO by acquiring and maintaining interest in and control of the enterprise involved in the unlawful collection of debt, including by providing the capital used to make the loans and grow the portfolios of the enterprise.  *Id.* ¶ 148.

This is not the first time Plaintiffs and their counsel have brought claims against non-tribal defendants allegedly involved in tribal lending.  But the few specific allegations against Asner and Landy here reveal stark differences in comparison to the allegations in those cases.  For example, the Complaint—as one of its many irrelevancies—references a "tribal lending arrangement between Matt Martorello and a tribal company formed by the Lac Vieux Desert Band of Chippewa Indians," none of whom have anything to do with this case.  *Id*. ¶ 39.  In the actual lawsuit that some of these Plaintiffs and their counsel filed against Martorello and the Lac Vieux, the plaintiffs alleged that Martorello and his company "was contractually entitled to exercise almost exclusive

control." *Id*. ¶¶ 40-42.   There are no equivalent allegations against Asner or Landy here.   And whereas the *Williams* complaint averred that Martorello and his company issued and received the loan payments themselves, leaving the tribal lenders with "no control," the Complaint here says only that "Defendants marketed, initiated, and collected usurious loans," without any specific reference to Asner or Landy, or any alleged facts to support that statement.   *Compare* Compl. ¶ 31 *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461 (E.D. Va. June 22, 2017), ECF No. 1 ("*Williams* Compl."), *with* Compl. ¶ 95.

## STANDARD OF REVIEW

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).   Although this requirement is not rigid, a Plaintiff must provide more than "a formulaic recitation of the elements of a cause of action."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Id.*

On a motion to dismiss, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).   Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."   *Id.*   Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*   "Whether plaintiffs have validly stated claims therefore depends on the factual content of the complaints, and not . . . conclusory statements."   *In re XE Servs. Alien Tort Litig.*, 665 F. Supp. 2d 569, 590 (E.D. Va. 2009).   Moreover, a court "need not accept factual claims or allegations if they are contradicted by other allegations or exhibits."   *McKoy v. Norfolk Redevelopment & Hous. Auth.*, No. 2:02-CV-268, 2002 WL 31953782, at *1 (E.D. Va. July 12,

2002), *aff'd*, 46 F. App'x 715 (4th Cir. 2002).  Indeed, a court must dismiss a complaint that relies

solely on "unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano v.

Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

## ARGUMENT

## I.    Plaintiffs' Claims Against Asner And Landy Are Untimely.

All of Plaintiffs' claims against Asner and Landy must be dismissed as untimely.  By the

Complaint's own telling, Asner's and Landy's supposed involvement in the alleged misconduct

came to an end in August of 2014, when they are alleged to have sold NPA and other businesses

to the Tribal Defendants.  The Plaintiffs cannot pursue claims based on conduct by Asner and

Landy that ended almost five years ago—or claims that arose when Asner and Landy had no

involvement in the operation of the business.

Plaintiffs notably do not allege when they took out loans from the Tribal Defendants.  But

their Complaint very clearly alleges Asner and Landy's August 2014 exit from involvement in the

operations of the Tribal Defendants' business.  The statutes of limitation for each of Plaintiffs'

causes of action expired long before the filing of the Complaint.  "Virginia's two-year catch-all

period set out in Virginia Code section 8.01-248" applies to unjust enrichment claims and licensing

claims.  *Zambrano v. HSBC Bank USA, N.A.*, No. 1:09-cv-996, 2009 WL 8753322, at *1 (E.D.

Va. Nov. 9, 2009), *aff'd*, 442 F. App'x 861 (4th Cir. 2011).[3]  Where, as here, the basis for a claim

---

[3] Some courts have applied a three-year statute of limitations to unjust enrichment claims under
Virginia law.  *E.g.*, *E. W., LLC v. Rahman*, 873 F. Supp. 2d 721, 730 (E.D. Va. 2012).  They reason
that because unjust enrichment claims require courts to imply a contract in law, courts should apply
the three-year limitations period governing claims about oral contracts, which they analogize to
implied contracts.  *Id.*  Multiple courts have rejected this analogy, however, and applied the two-
year catch-all period set out in Va. Code § 8.01–248.  *Zambrano*, 2009 WL 8753322, at *1; *Mich.
Mut. Ins. Co. v. Smoot*, 183 F. Supp. 2d 806, 808 (E.D. Va. 2001); *see also Pathak v. Trivedi*, 61
Va. Cir. 572 (2001) ("The statute of limitations for unjust enrichment is two years.").  Defendants
submit that the two-year limitations period is consistent with Virginia law and that the three-year

is "alleged improprieties in the issuing of the loan," the claim accrues when the loan issues. *Id.* at *1. Virginia interest rate claims are likewise subject to a two-year limitations period. Va. Code § 6.2-305(A). And civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Co. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Civil RICO claims accrue when the plaintiff discovered or should have discovered the alleged injury, *Potomac Electric Power Co. v. Electric Motor & Supply, Inc.*, 262 F.3d 260, 266 (4th Cir. 2001), which in this case, is the date on which the loan was issued. Thus, the claims at issue either are from before August 2014 and are time-barred, or are from after August 2014 and based on loans with which Asner and Landy never had any involvement. *See Lismont v. Alexander Binzel Corp.*, No. 2:12-cv-592, 2013 WL 6095461, at *3 (E.D. Va. Nov. 18, 2013) (where facts necessary for statute of limitations defense appear on face of complaint, dismissal is proper); *In re XE Servs.*, 665 F. Supp. 2d at 598 ("[A]ssuming the facts alleged in the complaints to be true, the RICO claim of [the plaintiff] is time-barred.").

To be sure, by repeatedly alleging misdeeds of the "Defendants," Plaintiffs attempt to create the *misimpression* that Asner and Landy had some ongoing role in the Tribal Defendants' businesses after 2014. But a careful read of the Complaint reveals that Plaintiffs never actually allege as such. Take, for instance, Plaintiffs' claim that today "the lending enterprise continues to be largely operated in the same manner [as before August 2014], *i.e.*, by 111 people located in Overland Park, Kansas, who were former employees of National Performance Agency and its affiliates." Compl. ¶ 4; *see also id.* ¶¶ 91-93. Notably, Plaintiffs do not claim that Asner or Landy

---

period is particularly inappropriate here because Plaintiffs have written, rather than implied, contracts governing the loans at issue. Even using the longer three-year period, however, Plaintiffs do not allege any actionable conduct by Landy or Asner within that timeframe, so their unjust enrichment claims fail just the same.

themselves are among these employees, or that they have overseen these employees since 2014. *Cf. id.* ¶ 66 (alleging that Landy oversaw these employees *before* 2014).[4]  Nor can one *infer* from these 111 off-reservation employees' alleged continued involvement in the operations of the tribal lending enterprise that Asner or Landy also remain involved.

Plaintiffs' other allegations relating to the period of and after the August 2014 sales, meanwhile, do not differentiate Asner and Landy from the Tribal Defendants and other defendants, and thus are too vague to salvage their untimely Complaint.  For instance, the Complaint states that "Defendants, Rosette, and other members in the industry worked to develop a solution to shield the non-tribal members," *id.* ¶ 85, but it does not provide any specific details about how *Asner or Landy* were involved in this alleged industry-wide effort (or if they were).  Nor does it cite to any documents that imply Asner or Landy intended or engaged in anything other than a routine sale of their businesses.  This Court has already ruled that these types of conclusory and unspecific allegations cannot survive a motion to dismiss.  *See* Tribal Defendants' Brief in Support of Motion to Dismiss at 14, *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461 (E.D. Va. Sept.

---

[4] At one point, Plaintiffs allege that the 2014 sales merely "chang[ed] the ownership of the company on paper," and that NPA "continue[d] to operate in the same manner."  *Id.* ¶ 25.  The Complaint elsewhere clarifies that here Plaintiffs actually mean that "the control of the day-to-day functions are handled by non-tribal members more than 1,800 miles away from the Tribe's reservation."  *Id.*  Notably, in this allegation Plaintiffs stop short of naming Asner or Landy in particular.  The only inference to be drawn from that significant omission is that Plaintiffs lack a non-speculative basis for believing that Asner or Landy are among the non-tribal members who worked at NPA after the 2014 sale.  If it were otherwise, Plaintiffs would have said so.  Indeed, the same issue plagues many of Plaintiffs' assertions, such as the claim that "non-tribal outsiders continue to receive the vast majority of the revenue pertaining to the enterprise."  *Id.* ¶ 94. *Compare id.* ¶¶ 19-20 (alleging that Richard Mosely, Jr. and RM Partners, LLC "provided a significant amount of the capital used to make the loans," *id.* ¶ 19), *with id.* ¶¶ 17-18 (not making similar allegations about Asner and Landy).  These examples indicate that omitting Asner and Landy's names from post-2014 allegations is not sloppy drafting, but a cagey attempt to imply Asner and Landy's involvement without running afoul of Federal Rule of Civil Procedure 11(b)(3)'s ban on pleading speculative facts.

29, 2017), ECF No. 25 ("[A] careful reading of several allegations that refer to "Defendants" show that the term is either used generically or later qualified to mean [one of the non-tribal officer defendants]."); Order Granting Tribal Defendants' Motion to Dismiss in Part at 1, *Williams v. Big Picture Loans*, No. 3:17-cv-461 (E.D. Va. Mar. 12, 2018), ECF No. 117 ("[T]he Class Action Complaint does not adequately allege any claims against [the tribal officer defendants].").

Indeed, Plaintiffs' silence about Asner and Landy's conduct post-2014 is deafening. It is not that Plaintiffs were unsure how to present detailed allegations. As noted, they present very detailed allegations about *other* tribal lenders and defendants in *other* cases. The takeaway is obvious: Plaintiffs are either hiding the ball because the relevant facts are actually bad for them, or failing to allege facts because their Complaint is an exercise in speculation.

In the end, none of Plaintiffs' pleading strategies alters the inescapable fact that their claims against Asner and Landy fail because of that critical period: August of 2014. If Plaintiffs amend their complaint to show they took out their loans before then, then Plaintiffs' claims are untimely. If they amend their complaint to show they took their loans out after, than they have failed to allege any involvement that Asner or Landy had with this case. For these reasons, their claims against Asner and Landy must be dismissed.

## II.   Plaintiffs' State Law Claims Do Not State A Claim And Fail As A Matter Of Law.

Beyond their untimeliness, Plaintiffs' state law claims suffer from multiple other flaws that require dismissal.

### A.  Plaintiffs' Claims Fail Under Virginia's Active Participation Doctrine.

In Virginia, liability cannot rest solely on a defendant's title or corporate office. *See Stafford Urgent Care, Inc. v. Garrisonville Urgent Care, P.C.*, 224 F. Supp. 2d 1062, 1065 (E.D. Va. 2002). Instead, pursuant to Virginia's active participation theory, for a defendant to be liable,

the claims must be based on their actions as individuals. *See Andrews v. Ring*, 585 S.E.2d 780, 787 (Va. 2003). Here, the allegations against Asner and Landy that contain any real specificity relate solely to activities they are alleged to have engaged in on behalf of their companies (*e.g.*, signing documents, supervising employees, etc.). Such conclusory allegations of "active participation" require dismissal. *See Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*, 219 F. Supp. 2d 705, 708 (E.D. Va. 2002).

### B. Plaintiffs Fail To Adequately Allege A Violation Of Virginia Usury Law.

This Court should dismiss the Virginia usury claims asserted against Asner and Landy. These claims fail as a matter of law because they ignore the plain language of the Virginia Code, which limits the persons and entities who can be liable under the licensing and interest rate provisions. That language forecloses a finding of a liability against Asner or Landy here.

Plaintiffs first invoke § 6.2-1541(A) as the basis for liability under the Virginia Code. Compl. ¶ 160. But that provision merely states that "[a] loan contract shall be void if any act has been done in the making or collection thereof that violates § 6.2-1501," the licensing requirement. Va. Code § 6.2-1541(A). It does not provide for any relief. *Id.* To the extent Plaintiffs meant to invoke § 6.2-1541(B), which establishes a remedy when "a person has taken any action in its making or collection in violation of § 6.2-1501," that provision does not authorize recovery against Asner or Landy. It establishes a remedy only against the "lender" of the loan at issue. Va. Code § 6.2-1541(B). But Plaintiffs do not allege that Asner or Landy is a "lender." *See* Compl. ¶¶ 17-18. The only "lenders" identified in the Complaint are Golden Valley, Silver Cloud, Majestic Lake, and Mountain Summit. *See* Compl. ¶¶ 21-24 (describing each as "online lender"). Similarly, each Plaintiff's Consumer Loan and Arbitration Agreement clearly identifies the "lender" in boldface type at the top of the first page. *See, e.g.*, Memorandum in Support of

Defendants Scott Asner and Joshua Landy's Motion to Compel Arbitration, Ex. 1 at 1 [hereinafter Arbitration Memo, Ex. 1].[5]  None of the Agreements identify Asner or Landy.

Plaintiffs may not ignore this express limitation on liability.  As the Supreme Court of Virginia has commanded, each provision of the Virginia usury statute must be construed "as it is written," based on the assumption that "the legislature chose, with care, the words it used." *Greenberg v. Commonwealth ex rel. Att'y Gen. of Va.*, 499 S.E.2d 266, 269 (Va. 1998) (quoting *Barr v. Town & Country Props., Inc.*, 499 S.E.2d 672, 674 (Va. 1990)).  Thus, in *Greenberg*, the court rejected usury claims against a principal of the lending company, finding that the statute "precludes imposition of restitution on any entity or individual other than the lender."  *Id*. at 268. As the court explained, the statute also uses the term "person" in other provisions, which it defines more broadly; by choosing the narrower term "lender" in the provision at issue, the General Assembly evinced its "intent to limit those from whom borrowers may obtain restitution."  *Id*. at 270; *see also Va. Polytechnic Inst. & State Univ. v. Prosper Fin., Inc.*, 732 S.E.2d 246, 250 (Va. 2012) (General Assembly's use of definite article 'the' when coupled with singular noun reflects legislative intent to reference single, specific, identifiable noun).  Thus, allowing recovery against Asner and Landy here would impermissibly "invade the province of the legislature and . . . expand the scope of liability."  *Greenberg*, 499 S.E.2d at 270.  Plaintiffs' licensing claim thus fails as a matter of law.

Plaintiffs also assert claims under § 6.2-305(A), but those claims suffer from the same fatal defects.  Section 6.2-305(A) allows a person paying interest in excess of authorized rates "to recover from the person taking or receiving such payments."  Va. Code § 6.2-305(A).  As

---

[5] The Court may consider the underlying loan agreements because they are "integral to the complaint and there is no dispute about [their] authenticity."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

*Greenberg* teaches, 396 S.E.2d at 270, the only proper defendant is the "person" who is in fact "taking or receiving such payments," Va. Code § 6.2-305(A).  The loan agreements clearly provide that the Tribal Defendants and "any subsequent holder of this Agreement" take or receive payments.  *See, e.g.*, Arbitration Memo, Ex. 1 at 1-2 ("You promise to pay to the order of Mountain Summit Financial, Inc. . . . or any subsequent holder of this Agreement any and all sums due hereunder.").  But Plaintiffs do not allege that Asner or Landy took or received any such payments, or that they have been the holders of the Agreements at any point in time.

While courts within the Fourth Circuit have recognized limited circumstances in which parties other than direct lenders can be regarded as "taking or receiving such payments," those circumstances are not present here.  In *Williams*, the usury claim against Martorello survived dismissal.  Order Denying Defendant Martorello's Motion to Dismiss, *Williams v. Big Picture Loans*, No. 3:17-cv-461 (E.D. Va. Mar. 12, 2018), ECF No. 119 ("*Williams* Order").  The reason is clear:  Martorello and his companies allegedly issued and received the payments, bringing Martorello's conduct and role within the scope of § 6.2-305(A).  *See Williams* Compl. ¶ 36 ("[T]he money loaned to Plaintiffs was transferred from a bank account owned and operated or controlled by Bellicose Capital *and Martorello*, and neither the Tribe nor its officials were allowed to access the accounts . . . ." (emphasis added)); *id.* ¶ 37 (explaining that "all payments went to Bellicose Capital," which Martorello founded and led as CEO).  Likewise, *Gibbs v. Haynes Investments, LLC* involved allegations that the individual defendant received part of each loan payment.  368 F. Supp. 3d 901, 928 (E.D. Va.), *appeal docketed*, No. 19-1434 (4th Cir. Apr. 23, 2019).  Viewed against *Williams* and *Gibbs*, the allegations against Asner and Landy fall far short.  Accordingly, this Court should also dismiss the Virginia usury claim.

### C.  Plaintiffs Fail To Allege That Asner Or Landy Was Unjustly Enriched.

Under Virginia law, "[a] plaintiff asserting unjust enrichment must demonstrate the following three elements: "(1) he conferred a benefit on [the defendant]; (2) [the defendant] knew of the benefit and should reasonably have expected to repay [the plaintiff]; and (3) [the defendant] accepted or retained the benefit without paying for its value." *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 165-66 (4th Cir. 2012) (quoting *Schmidt v. Household Fin. Corp*., 661 S.E.2d 834, 838 (Va. 2008)).  Plaintiffs have failed to allege any of these elements with respect to Asner and Landy, and thus have failed to state a claim.  *See Schmidt v. Household Fin. Corp*., 661 S.E.2d 834, 838 (Va. 2008).

Courts routinely dismiss unjust enrichment claims where, as here, the plaintiffs fail to allege that the moving defendant himself received and accepted the benefit.  "[O]ne of the requirements for the application of unjust enrichment is that services were accepted by the person sought to be charged, used and enjoyed by him or her." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 n.12 (E.D. Va. 2007) (emphasis removed) (quoting *Eckstone & Assoc. Ltd. v. Keilp*, 1995 Va. Cir. LEXIS 1404, at *3-4 (Va. Cir. 1995)).  It is not enough to allege that the plaintiff parted with something of value or conferred a benefit on another; the plaintiff must show receipt of that benefit *by the defendant* in order to state a claim.  *Id*. (collecting cases).  Put another way, "[w]hen the defendant has derived no right or benefit from the plaintiff, the law will not indulge in the fiction of an implied promise of the defendant to the plaintiff."  *Id*. (quoting *Park Eldenwood Assocs. v. Firestone Capital Corp*., 26 Va. Cir. 70, 74 (Va. Cir. 1991)).

*Hyundai Emigration Corp. v. Empower-Visa, Inc*. is directly on point.  No. 1:09-CV-124, 2009 WL 10687986 (E.D. Va. June 17, 2009) ("*Yoon*").  The plaintiff in that case, Hyundai, brought civil RICO claims against various defendants based on a payment scheme.  *Id.* at *1.

Hyundai also asserted a claim for unjust enrichment under Virginia law. *Id.* Two individual defendants who did not directly receive the payments at issue, but operated companies allegedly involved in the scheme, moved to dismiss the unjust enrichment claim. *Id.* (decision addressing motion brought by John Yoon, head of defendant Empower-Visa, Inc.); *Hyundai Emigration Corp. v. Empower-Visa, Inc.*, No. 1:09-CV-124, 2009 WL 10687964, at *1 (E.D. Va. July 2, 2009) ("*Lee*") (decision addressing motion brought by Jay Lee, head of defendant Worldwide Employment, Inc.). The individual defendants argued that Hyundai "fail[ed] to allege that it paid [the individual defendants] directly or that [the individual defendants] received any portion of the payments Hyundai made." *Yoon*, 2009 WL 10687986, at *7; *Lee*, 2009 WL 10687964, at *8.

The court granted their motions to dismiss. As the court explained, while Hyundai alleged in conclusory fashion that all defendants received the payments at issue, other allegations in the Complaint—as well as documents referenced therein—contradicted that allegation and showed that the payments went to a bank account held by Empower, one of defendant companies. *Yoon*, 2009 WL 10687986, at *7. In fact, the agreement governing the payments at issue *required* submission of payments to Empower, removing any doubt about the actual recipient. *Id.* As a result, "any benefit conferred was conferred upon Empower," not the individual defendants. *Id.* The court therefore dismissed the unjust enrichment claim against the individual defendants, while allowing it to proceed against Empower as the company actually receiving payment. *Id.*; *Lee*, 2009 WL 10687964, at *8.

This case requires the same result. Plaintiffs' well-plead, non-conclusory allegations in this case do not claim that Asner and Landy themselves received any loan payments. Indeed, as noted above the Consumer Loan and Arbitration Agreements, like the governing agreement in *Hyundai Emigration Corp.*, direct Plaintiffs to submit payment to a party other than Asner and

Landy (*i.e.*, the Tribal Lending Company that issued the loan).  *See* Arbitration Memo, Ex. 1 at 1-2.  In light of that fact, Plaintiffs' conclusory allegations that Asner and Landy collected debt from the Plaintiffs do not pass muster.  *See, e.g.*, Compl. ¶ 95.  If anything, the allegations here are even more tenuous than in *Hyundai Emigration Corp.*, where one of the individual defendants was the president of the company that actually received the payments at issue—and that *still* was not enough to survive dismissal.  Based on a straightforward application of this precedent, Plaintiffs have failed to state an unjust enrichment claim because they have not adequately pleaded the essential elements.

The deficiency of Plaintiffs' allegations is unmistakable in comparison to the specific facts alleged against individual defendants in similar actions filed by the same counsel (and in some cases the same Plaintiffs).  In *Williams v. Big Picture Loans, LLC*, for example, the plaintiffs brought unjust enrichment claims against Matt Martorello, who allegedly "was the architect of the rent-a-tribe lending scheme and had direct personal involvement in the creation and day-to-day operations of the illegal enterprise."  *Williams* Compl. ¶ 14.  The plaintiffs alleged that Martorello's company "was the actual entity that procured the investment capital, serviced the loans, and received the vast majority of the revenue from the loans, which was then funneled to Martorello."  *Id*. ¶ 15.  According to the complaint, Martorello and his company both issued and received the loan payments, *id*. ¶¶ 36-37, leaving the tribal lenders with "no control," *id*. ¶ 31.  Based on these specific factual allegations, this Court denied Martorello's motion to dismiss the unjust enrichment claim against him.  *Williams* Order.  Its decision was fully consistent with *Hyundai Emigration Corp.* since the plaintiffs in *Williams* actually alleged that Martorello received the loan payments.  But there are no equivalent allegations against Landy or Asner here.  Indeed,

17

Plaintiffs here allege only that Asner and Landy may have had an indirect and partial interest in one or more companies that may have received loan payments.

The allegations against Asner and Landy are also distinguishable from the allegations against Stephen Haynes in *Gibbs*.  The plaintiffs there alleged that Haynes did more than merely invest in the tribal lending operation in that matter.  *Gibbs*, 368 F. Supp. 3d at 933-34.  The court therefore found that the complaints alleged that Haynes benefitted from each loan payment because he "derived income" each time borrowers entered into contracts with the tribal lenders.  *Id*.  Not so here.  The Complaint lacks any allegations showing a compensatory scheme under which Asner or Landy benefitted with each loan origination or payment.

Plaintiffs and their counsel know how to plead an adequate unjust enrichment claim against individual defendants allegedly involved in tribal lending operations.  Yet their Complaint in this case lacks the key factual allegations that allowed them to survive motions to dismiss in *Williams*, *Gibbs*, and *Solomon*.  Without such allegations, the Complaint is too "scant on facts" to state a claim for unjust enrichment.  *See Brown v. Transurban USA, Inc.*, 144 F. Supp. 3d 809, 844 (E.D. Va. 2015).  This Court should therefore dismiss the unjust enrichment claims against Asner and Landy.

### III.   Plaintiffs' Complaint Fails To State A RICO Claim.

The Court should also dismiss Plaintiffs' civil RICO claims against Asner and Landy.

As relevant here, RICO lays out three prohibitions:

- It shall be unlawful for any person . . . through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . .  18 U.S.C. § 1962(b).

- It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs . . . through collection of unlawful debt.  *Id.* § 1962(c).

- It shall be unlawful for any person to conspire to violate any of the [previous] provisions. § 1962(d).

As their statutory text indicates, each of these provisions has elements distinct from the others, such as: under subsection (b), a plaintiff must show that the defendant acquired or maintained an interest or control in an enterprise, and that the defendant did so *through* collection of an unlawful debt; under subsection (c), a plaintiff must show both that the defendant associated with an enterprise and that the defendant participated in the conduct of that enterprise's affairs; and under subsection (d), a plaintiff must establish the existence of a conspiracy. Yet despite their differences, these provisions also all have elements in common. For instance, in all cases a plaintiff must sufficiently allege collection of unlawful debt.

Here, Plaintiffs' claims against Asner and Landy fail on all of these counts. They suffer from the same fundamental defects as all of their claims—there are insufficient allegations against Asner and Landy and, in any event, Plaintiffs have themselves pled that Asner and Landy sold any interest in entities acquired by the Tribal Defendants more than four years ago. Moreover, Plaintiffs fail to satisfy the elements of the various civil RICO claims they assert. Accordingly, Plaintiffs' Complaint fails to state a RICO claim against Asner or Landy.

### A. Plaintiffs Do Not Allege That Asner Or Landy Collected Unlawful Debt.

All of Plaintiffs' RICO claims against Asner and Landy must be dismissed for failure to allege that Asner and Landy collected an unlawful debt. As discussed above, collection of an unlawful debt is an essential element common to all of Plaintiffs' RICO claims. *See* 18 U.S.C. § 1962(b) ("through collection of an unlawful debt"); *id.* § 1962(c) (same); *id.* § 1962(d) (conspiracy to violate subsections (a), (b), or (c)). And as courts in this circuit have recognized, collection of an unlawful debt cannot be established unless Plaintiffs can show a violation of the relevant state usury law, as such violation "undergirds all the RICO counts." *Gibbs*, 368 F. Supp.

3d at 927.  For the reasons described *supra* in Part II.B as well as the arguments made in the Tribal Defendants' motion to dismiss, Plaintiffs' Virginia usury claims must be dismissed as a matter of law.  Without that claim as a foundation, all of their RICO claims against Asner and Landy must be dismissed as a matter of law as well.

### B.      Plaintiffs' Claims Must Be Dismissed For Lack of Allegations Related To Any Participation In The Alleged Enterprise In The Last Four Years.

For the same reasons discussed above with respect to the statute of limitations, Plaintiffs' claims fail to state a claim under civil RICO.  Plaintiffs who borrowed money from the Tribal Defendants after August of 2014 did so at a time when, even based on Plaintiffs' allegations, Asner and Landy had no involvement in the operations of the alleged enterprise.  Asner and Landy did not make the loans, did not participate in the loans, did not service the loans, and had no connection to the borrowers.  In no sense were Asner and Landy participating in the alleged enterprise, controlling it, or conspiring with anyone.[6]  To such Plaintiffs, Asner and Landy are complete strangers.  Because Plaintiffs have failed to show that Asner or Landy were involved with the Tribal Defendants after 2014, they have not satisfied § 1962(b)'s requirement that the defendant have an interest in or control of the alleged RICO enterprise, or § 1962(c)'s requirement that the defendant participated in the conduct of the alleged enterprise's affairs, or § 1962(d)'s requirement that Asner or Landy had sufficient intent to be engaged in conspiracy.

### C.      Plaintiffs Fail To State A RICO Claim Against Asner Or Landy Even With Respect To Pre-August 2014 Alleged Conduct.

Because they are untimely, this Court should not consider RICO allegations against Asner and Landy that pre-date the August 2014 sale.  Yet even if this Court deems such allegations

---

[6] For any Plaintiff who borrowed money before August of 2014, their civil RICO claim is barred by the statute of limitations. *See supra* Part I.

relevant, Plaintiffs still fail to state a RICO claim against Asner or Landy.   Most glaringly, Plaintiffs fail to establish: (1) pursuant to § 1962(b), that Asner or Landy's interest in the enterprise occurred *through* collection of unlawful debt; (2) pursuant to § 1962(c), that Asner or Landy participated in the conduct of the affairs of the alleged the enterprise; and (3) pursuant to § 1962(c) and § 1962(d), that Asner or Landy associated or conspired with the alleged enterprise.

> **1.    Under § 1962(b) Plaintiffs Have Not Pled That Asner Or Landy Acquired An Interest In Or Maintained Control Over The Alleged Enterprise *Through* Unlawful Collection Of Debt.**

Section 1962(b) requires Plaintiffs to show that Asner and Landy's alleged collection of an unlawful debt was "the *cause* of the acquisition" or maintenance of their interest.  *In re XE Servs.*, 665 F. Supp. 2d at 597 (emphasis added) (quoting *Toucheque v. Price Bros. Co.*, 5 F. Supp. 2d 341, 350 (D. Md. 1998)); *see* 18 U.S.C. § 1962(b) ("It shall be unlawful for any person . . . *through* collection of an unlawful debt to acquire or maintain . . . any interest in or control of any enterprise . . . ." (emphasis added)).   Alleging a pattern of racketeering activity and alleged illegal acts is not enough to state a claim under Section 1962(b).   *In re XE Servs.*, 665 F. Supp. 2d at 596-97.   Rather, to state a claim, a plaintiff must allege that the defendant "acquired an interest in, or control of, an enterprise *as a result of*" his unlawful conduct.   *Id* at 596 (emphasis added).

Plaintiffs make no such showing here.   Plaintiffs have not pled "non-speculative facts that the . . . Defendants continued to collect revenue, and increase [their] investment, *in order to* maintain [their] interest and control over the enterprise."  *Gibbs*, 368 F. Supp. 3d at 932 (emphasis in original).   They do not claim, for instance, that "Defendants reinvested . . . funds" obtained from the alleged unlawful collection of debt, "showing an interest . . . in increasing their control and interest in the [alleged] enterprise."  *Id.*   Rather, like in *In re XE Services*, Plaintiffs at most "merely plead that [Defendants] engage[d] in illegal acts."  665 F. Supp. 2d at 597; *see also Toucheque v.*

*Price Bros. Co.*, 5 F. Supp. 2d 341, 350 (D. Md. 1998) ("Proposed Count VI fails to allege how the pattern of racketeering activity caused any of the Defendants to acquire control in Price Brothers; it simply alleges that Price Brothers and the individual Defendants used Price Brothers to conduct racketeering activity."). Plaintiffs' § 1962(b) claim is thus "plainly insufficient." *In re XE Servs.*, 665 F. Supp. 2d at 597.

Indeed, Plaintiffs fail to plead facts that show that Asner or Landy had control over the enterprise *at all*—acquired through collection of unlawful debt or otherwise. Simply compare the blanket statements that Plaintiffs have made with the detailed ones put forward in other RICO cases. In *Gibbs*, the plaintiffs asserted—through "substantial allegations" made "with great specificity," 368 F. Supp. 3d at 932, 933—that the defendants had "control[]" over "the amount of funding [a tribal lender] had, thus controlling the size of the business," and that they "acted on behalf of [the tribal lenders]," "[meeting] with multiple banks and identifying various potential partners," *id.* at 933. In *Solomon v. American Web Loan*, the plaintiffs alleged that the defendant "control[led] and direct[ed] the scheme through weekly calls," "made their financing contingent on the existence, validity, and enforceability of critical agreements underlying the illegal lending scheme," "had authority over changes to any of those agreements," "restricted [other] entities [associated with the enterprise] . . . from engaging in lines of business outside the illegal lending scheme," "required weekly reporting on the financial performance of the illegal loans," "review[ed] . . . financial statements and cash reconciliation on a monthly bases [sic]," and conducted "quarterly on-site visits." No. 4:17-cv-145, 2019 WL 1320790, at *7, *10 (E.D. Va. Mar. 22, 2019) (quoting complaint); *see also id.* at *4. Indeed, the *Solomon* plaintiffs even provided a slide from a presentation the defendant made to its investors, indicating that a defendant "employ[ed] a 'hands-on' approach which include[d] 'frequent interaction with management,

attending board of directors' meetings, consulting with industry experts, working with third-party consultants and developing portfolio company strategy with equity investors." *Id.* at *4 (quoting complaint).

Plaintiffs have made no such detailed allegations here.  At most, they have alleged that Defendants Asner and Landy indirectly owned an interest in entities that provided services and/or capital to the Tribal Defendants.  Such allegations are not sufficient to show that Asner or Landy had control over the Tribal Defendants, and certainly not sufficient to show that Asner or Landy allegedly collected unlawful debt *in order to* maintain or acquire interest or control in the alleged enterprise  *See In re XE Servs.* 665 F. Supp. 2d at 597; *Toucheque*, 5 F. Supp. 2d at 350.

### 2.      Under § 1962(c), Plaintiffs Have Not Pled That Asner Or Landy Participated In The Conduct Of The Alleged Enterprise's Affairs.

Section 1962(c) requires that Plaintiffs show that Asner and Landy "participate[d], directly or indirectly, in the conduct of [the alleged] enterprise's affairs."  18 U.S.C. § 1962(c).  The Supreme Court has termed this element an "'operation or management' test," which requires the defendants to be involved in "directing the enterprise's affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

Here, that test is not satisfied.  With regard to Landy's claimed direct involvement in the lending operations, Plaintiffs' allegations show, if anything at all, just that Landy was a supervisor of employees who provided outside services to the Tribal Defendants.  Compl. ¶ 66.  Even if Landy were alleged to have worked for the Tribal Defendants themselves, he would not satisfy the operation-or-management test by merely supervising call center employees.  And the allegation falls especially short here, because the supervised employees provided *outside* services:  Under the operation-or-management test, an outsider is not liable for an enterprise's acts—even when his services are essential to the enterprise's operation—unless he "act[s] as a direct participant in

corporate affairs." *In re Am. Honda Motor Co., Dealerships Relations Litig.*, 941 F. Supp. 528, 560 (D. Md. 1996); s*ee also Taylor v. Bettis*, 976 F. Supp. 2d 721, 735 (E.D.N.C. 2013), *aff'd*, 693 F. App'x 190 (4th Cir. 2017).  "Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself."  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998).

Contrast, again, the paucity of allegations against Landy with the detailed allegations of control in *Solomon*.  As noted, there, *e.g.*, defendants "control[led] and direct[ed] the scheme through weekly calls," "made their financing contingent on the existence, validity, and enforceability of critical agreements underlying the illegal lending scheme," "had authority over changes to any of those agreements," "restricted [other] entities [associated with the enterprise] . . . from engaging in lines of business outside the illegal lending scheme," "required weekly reporting on the financial performance of the illegal loans," "review[ed] . . . financial statements and cash reconciliation on a monthly basis,"  and "conducted quarterly on-site visits."  2019 WL 1320790, at *7, *10; *see also id.* at *4.  Plaintiffs make no such allegations about direction or control against Landy.

With regard to Asner, the Complaint does not allege that Asner had *any* direct involvement with the lending operations.  Although Plaintiffs claim that Asner "is one of the former . . . managers of the National Performance Agency," Compl. ¶ 18, Asner's alleged management of NPA consists only of his having signed some documents, and only in the context of the August 2014 *sale* of NPA, *see id.*  Having signing authority to execute a document to sell a business, even if that authority is indicative of having some ownership interest in the entity, cannot satisfy the operation-or-management test.  Indeed, under the Supreme Court's test, there is a significant

24

difference between a business partner, a passive investor, or an entity that is a creditor of an enterprise and an entity that "tak[es] additional steps as an outsider to direct the operation or management of its customer, the RICO enterprise." *Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 690 (8th Cir. 2008). For that reason, the Fourth Circuit has held that simply lending money to an alleged enterprise and receiving a return—which is, at bottom, the most that Plaintiffs allegations against Asner show here—is not control:

> The normal incidents of a borrower-lender relationship, including monitoring, protection and disposition of collateral, do not amount to control. Actual day-to-day involvement in management and operations of the borrower or the ability to compel the borrower to engage in unusual transactions is required for the purposes of showing that a lending institution had control over a borrower.

*NCNB Nat'l Bank of N.C. v. Tiller*, 814 F.2d 931, 936 (4th Cir. 1987), *overruled on other grounds by Busby v. Brown Supply, Inc.*, 896 F.2d 833 (4th Cir. 1990).

Nowhere—except in conclusory fashion prohibited by *Iqbal*—do Plaintiffs allege any facts to suggest that Asner and Landy themselves controlled the Tribal Defendants in this case. Because the Complaint here fails to allege *any* non-conclusory facts to suggest that Asner or Landy directed the enterprise, Plaintiffs have not established that Asner or Landy "participated" in the conduct of the affairs of the enterprise.

### 3. Under § 1962(c) And § 1962(d), Plaintiffs Have Not Pled That Asner Or Landy Associated With The Alleged Enterprise Or Conspired With It.

Section 1962(c) requires that Plaintiffs show that Asner or Landy "associated with" the alleged enterprise. 18 U.S.C. § 1962(c). Association, in turn, requires a showing that Asner and Landy's activities were outside of their ordinary business affairs. *Solomon*, 2019 WL 1320790, at *9; *see Reves*, 507 U.S. at 185 ("'[O]utsiders' may be liable under § 1962(c) if they are 'associated with' an enterprise and . . . *its* affairs," "not just their *own* affairs."). Likewise, a § 1962(d) conspiracy claim requires a showing that the alleged conspirators "agree[d] to pursue the same

criminal objective." *Salinas v. United States*, 522 U.S. 52, 63 (1997).  This requires more than "mere association with an enterprise." *United States v. Mouzone*, 687 F.3d 207, 218 (4th Cir. 2012).  Rather, "to prove a RICO conspiracy," the plaintiff must establish "that the defendant knew of and agreed to the overall objective of the RICO offense."  *Solomon*, 2019 WL 1320790, at *11 (quoting *United States v. Posada-Rios*, 158 F.3d 832, 857 (5th Cir. 1998)).

Plaintiffs have not alleged facts that make the association showing, nor that show that Asner or Landy joined the alleged conspiracy.  Plaintiffs plead only that Asner and Landy "appear to have" been one-time, "indirect[]" owners "in part" of businesses that either provided services to or invested in loans made by the Tribal Defendants.  Compl. ¶ 3.  They have not put forward, for instance, an allegation of knowledge or intent on the part of Asner and Landy that the Tribal Defendants were engaged in illegal activity.  *Cf. Solomon*, 2019 WL 1320790, at *9 (noting that complaint alleged that individual knew that the lending activities were illegal when one "potential investor back[ed] out" and another "raised concerns directly" (quoting complaint)).

Indeed, if anything, the facts Plaintiffs allege actually indicate that Asner and Landy intended *not* to be associated with the alleged enterprise—*i.e.*, Plaintiffs allege that Asner and Landy sold their businesses to the Tribal Defendants in August 2014.  Compl. ¶ 4.  Although Plaintiffs insist the sale was a sham, *id.*, they do not, as explained above, provide details to substantiate that claim, and instead use obfuscatory language to *imply* Asner and Landy's continued involvement.

More is required at this stage.  It is not enough to be a business partner, the officer of a service provider, or an indirect investor—and that is, at most, what Plaintiffs have alleged about Asner and Landy.  The § 1962(c) and § 1962(d) claims must therefore be dismissed.

## IV.     The Court Lacks Personal Jurisdiction Over Asner And Landy.

Plaintiffs have not alleged facts that allow this Court to exercise personal jurisdiction over Asner and Landy.  Although RICO contains a nationwide service provision, *see ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997), Plaintiffs here cannot rely on it because their RICO claims, as discussed above, are "wholly immaterial [and] insubstantial," *id.* at 629.  That leaves Plaintiffs just with Virginia's long-arm statute, which "extends the jurisdiction of its courts as far as federal due process permits."  *ePlus Tech, Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002) (explaining that in Virginia, the constitutional test and the statutory test merge).

Under the statutory and constitutional tests, Plaintiffs bear the burden of demonstrating that personal jurisdiction exists.  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  Although the Court must construe the Complaint in the light most favorable to Plaintiffs, Plaintiffs "must nevertheless plead facts 'sufficient in themselves to establish jurisdiction.'"  *Prototype Prods., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 700 (E.D. Va. 2012) (quoting *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997)).  Here, Plaintiffs have pled no facts indicative of Asner or Landy having "continuous or systematic" contacts with Virginia.  *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012).  Thus, they must establish specific jurisdiction "based on conduct connected to the suit."  *Id.* (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)).

Plaintiffs fail to make that showing.  Except for one untenably broad and vague assertion, Compl. ¶ 95, Plaintiffs have not alleged that Asner or Landy specifically targeted Virginia consumers.  And this is particularly true after August 2014.  Plaintiffs have not met their burden, and the Virginia claims against Asner and Landy must be dismissed for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendants Scott Asner and Joshua Landy respectfully request that the Court enter an Order granting this Motion, dismissing Plaintiffs' claims against them with prejudice, and awarding such further relief as the Court deems appropriate.[7]

Respectfully submitted:

Dated: June 21, 2019

/s/Jan A. Larson
Jan A. Larson (Bar No. 76959)
Thomas J. Perrelli (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington DC, 20001
Phone: (202) 639-6000
Facsimile: (202) 639-6066
JanLarson@jenner.com
TPerrelli@jenner.com

*Counsel for Defendants Scott Asner and Joshua Landy*

---

[7] If this Court dismisses the Tribal Defendants from this action on the basis of sovereign immunity, the entire case must be dismissed for failure to join a necessary and indispensable party. *See California v. Arizona*, 440 U.S. 59, 62-63 (1979); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002). Asner and Landy request an opportunity to brief that issue separately should it become necessary.

## CERTIFICATE OF SERVICE

I certify that on June 21, 2019, I have electronically filed the MEMORANDUM IN SUPPORT OF DEFENDANTS SCOTT ASNER AND JOSHUA LANDY'S MOTION TO DISMISS with the Clerk of Court using the ECF system which will send notification of such filing to the following:

> George Hengle
> Sherry Blackburn
> Willie Rose
> Elwood Bumbray
> Tiffani Myers
> Steven Pike
> Sue Collins
> Lawrence Mwethuku
> Golden Valley Lending, Inc.
> Mountain Summit Financial, Inc.
> Silver Cloud Financial, Inc.
> Majestic Lake Financial, Inc.
> Upper Lake Processing Service, Inc.

I further certify that on June 21, 2019, I caused a copy of the foregoing document and the notice of electronic filing to be mailed by U.S. Mail, to the following non-ECF parties:

Richard Moseley, Jr.
3901 W 56th Street
Fairway, KS 66205

Dated this June 21, 2019.

/s/Jan A. Larson

Jan A. Larson (Bar No. 76959)