# Exhibit 1

**STIPULATION AND AGREEMENT OF SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      RECITALS ..................................................................................................................... 1

II.     DEFINITIONS ............................................................................................................... 3

III.    TERMS OF THE SETTLEMENT ................................................................................ 7

IV.     RELEASE AND DISMISSAL ..................................................................................... 19

V.      NOTICE AND SETTLEMENT ADMINISTRATION ................................................ 20

VI.     DISPUTE RESOLUTION ........................................................................................... 23

VII.    PRELIMINARY APPROVAL ORDER AND FINAL FAIRNESS HEARING .......... 23

VIII.   FINAL APPROVAL OF SETTLEMENT AND OTHER CONDITIONS ................... 26

IX.     TERMINATION OF SETTLEMENT .......................................................................... 27

X.      MISCELLANEOUS PROVISIONS ............................................................................ 28

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Agreement") is entered into by and between Sherry Treppa, Tracey Treppa, Kathleen Treppa, Aimee Jackson-Penn,Jennifer Burnett, Carol Munoz, and Veronica Krohn (collectively, the "Tribal Officials"), Joshua Landy, Scott Asner, Michael Gortenburg, and David Vittor (together with the Tribal Officials, "Defendants"), on the one hand; and George Hengle, Sherry Blackburn, Willie Rose, Elwood Bumbray, Tiffani Myers, Steven Pike, Sue Collins, Lawrence Mwethuku, Regina Nolte, and Jo Ann Falash (collectively, the "Plaintiffs"), on behalf of themselves and all other similarly situated individuals, and as representatives of the Settlement Class, as these terms are defined in Section II, on the other.

## I.        RECITALS

The following recitals are material terms of this Agreement, and all capitalized terms are used as defined in Section II, below, except as otherwise defined herein. This Agreement is made in contemplation of the following facts and circumstances.

WHEREAS, on July 12, 2019, Plaintiffs (except Nolte and Falash) filed an amended putative class action complaint against Defendants (except Gortenburg and Vittor), among other defendants, in the United States District Court for the Eastern District of Virginia, Civil Action No. 3:19-cv-250 (the "Action");

WHEREAS, on January 9, 2020, the United States District Court for the Eastern District of Virginia (the "District Court") entered an order denying motions to compel arbitration and partly denying motions to dismiss in the Action;

WHEREAS, certain of Defendants appealed that order to the United States Court of Appeals for the Fourth Circuit;

WHEREAS, on November 16, 2021, the United States Court of Appeals for the Fourth Circuit affirmed the decision and order of the District Court;

WHEREAS, on December 13, 2021, the United States Court of Appeals for the Fourth Circuit entered a mandate, at which time the court's judgment took effect;

WHEREAS, on February 14, 2022, certain of Defendants filed Petitions for Writ of Certiorari to the Supreme Court of the United States;

WHEREAS, on March 15, 2022, Plaintiffs (including Nolte and Falash) filed a putative class action complaint against A.C. Israel Enterprises, Inc. d/b/a Ingleside Investors, Richard Investors, LLC, Greg Warner, Ferrell Capital, LLC, Seville, Ltd., Monu Joseph, Joseph Investment, LLC, Joseph NPA Investment, LLC, E Opportunities, LLC, Skye, LLC, Cabbage City, LLC, David J. Vittor, The David J. Vittor Trust, Kai Investments, LLC, Benjamin Gravley, Signal Light, LLC, Hymken, LP, George Kellner, and Kellner Capital, LP captioned *Blackburn v. A.C. Israel Enterprises, Inc.,* Case No. 3:22-cv-00146 (DJN) (E.D. Va.) (the "New Litigation");

WHEREAS the New Litigation included claims against Vittor and would have included claims against Gortenburg;

WHEREAS, on April 21, 2022, Plaintiffs filed a Second Amended Complaint in this Action to add Nolte and Falash as Plaintiffs and to add Gortenburg and Vittor Defendants;

WHEREAS, Defendants deny any and all claims alleged by Plaintiffs in the Action, further deny that any Plaintiffs or any members of the Settlement Class they purport to represent have suffered any injury or damage, have to date vigorously defended against the Action, and would if necessary defend against any claims that have or could be asserted against them in the New Litigation;

WHEREAS Plaintiffs and Class Counsel have conducted an investigation of the legal claims at issue, by review and analysis of documents that Defendants provided in discovery and during settlement negotiations;

WHEREAS Plaintiffs and the Tribal Officials participated in multiple negotiations with one another that culminated with a mediation session with Magistrate Judge Mark Colombell on February 23, 2022;

WHEREAS Plaintiffs, Landy, Asner, and Gortenburg participated in subsequent and separate negotiations with mediator Nancy Lesser, including an in-person mediation on March 7, 2022, and numerous follow-up communications thereafter;

WHEREAS based on the investigation and mediation sessions described above, Plaintiffs and Class Counsel have concluded that it would be in the best interests of the Settlement Class to enter into this Agreement in order to avoid the uncertainties of litigation and to assure benefits to the Settlement Class and that the settlement contemplated hereby is fair, reasonable, and adequate and in the best interests of all members of the Settlement Class;

WHEREAS Defendants deny all material allegations in the Action; deny any jurisdiction in this Court save for purposes of enforcing this Agreement, including, for the Tribal Officials, on grounds of sovereign immunity; deny that this case should be litigated rather than arbitrated; deny any fault, wrongdoing, or liability whatsoever arising out of or related to their business practices; deny that any of the Plaintiffs' claims are timely and affirmatively state that they are barred by the applicable statutes of limitations; affirmatively state that their practices have been lawful and proper; deny that resolution of the merits of the Action is suitable for class treatment; and further

deny liability to Plaintiffs or to others similarly situated, including all members of the Settlement Class;

WHEREAS Defendants are mindful that defending the Action would require them to expend significant time and money, and therefore have decided that it is in their best interest to resolve the Action on the terms set forth in this Agreement and do so solely for the purposes of avoiding the burden, expense, and uncertainty of continuing litigation, and to obtain the conclusive and complete dismissal of the Action and release of all Released Claims;

WHEREAS the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims that have been or could be brought by or on behalf of Plaintiffs or the Settlement Class relating to the conduct by Defendants alleged in the Action; and

WHEREAS Execution of this Agreement is not, and shall not be construed as, an admission of wrongdoing or liability by Defendants, an admission that Defendants violated any provision of federal, state, or tribal law, or an admission that Defendants concede that class treatment of the Action is appropriate; and, further, this Agreement is inadmissible as evidence against any party except to enforce the terms of the Settlement and is not an admission of wrongdoing or liability on the part of any party to this Agreement.

NOW, THEREFORE, in consideration of the promises and agreements set forth herein, it is hereby STIPULATED AND AGREED, subject to the District Court's approval, that the Action below has been resolved as to Defendants only upon and subject to the following terms and conditions:

II.     **<u>DEFINITIONS</u>**

2.1 "Action" means the case pending in the United States District Court for the Eastern District of Virginia referred to above in the recitals to this Agreement: *Hengle v. Asner*, No. 3:19-cv-250 (E.D. Va.).

2.2 "Administrator" means the settlement administrator selected jointly by Class Counsel and the Tribal Officials. If Class Counsel and the Tribal Officials cannot reach an agreement on the settlement administrator, they agree to submit this issue to District Judge David J. Novak, who will have the final authority to pick the Administrator.

2.3 "Asner" means Scott Asner; AG613, LLC; SIA Oil, LLC; and Asner Family Holdings, LLC.

2.4 "Asner/Gortenburg Released Parties" means Scott Asner, Michael Gortenburg, AG613, LLC, SIA Oil, LLC, Asner Family Holdings, LLC, and Yukel Holdings, LLC, individually and to the extent of their interests (directly or indirectly held) in any entity associated in any way with the Tribal Corporations; any and all other entities owned in whole or part by Asner or Gortenburg; each of their related entities, controlling entities, entities under control, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and reorganized successors; and each of the former's current and former owners, members (including, but not limited to, member funds), directors, officers, managers, trusts, trustees, heirs, shareholders, employees, partners, contractors, joint-venturers, representatives, assigns, agents, lenders, insurers, reinsurers, administrators, and attorneys.

2.5 "CAFA Notice" refers to the notice made pursuant to the requirements imposed by 28 U.S.C. § 1715(b).

2.6 "Cash Award" means a cash payment to an eligible Settlement Class Member pursuant to Section 3.4(c).

2.7 "Class Counsel" means Kelly Guzzo PLC; Consumer Litigation Associates, P.C.; and Gupta Wessler, PLLC.

2.8 "Defendants" means the defendants named in the introductory paragraph of this Agreement.

2.9 "Direct Notice" means the notice that will be provided pursuant to Sections 5.3(a) and 5.3(b), subject to approval by the District Court, substantially in the form attached hereto as "Exhibit 1."

2.10 "District Court," referred to above in the recitals to this Agreement, means the United States District Court for the Eastern District of Virginia.

2.11 "Effective Date" means the date that the Judgment becomes final for all purposes because either (i) the Court has entered the Final Approval Order and there were no objections; (ii) an objection was filed, the Court has entered the Final Approval Order notwithstanding any objection, no appeal has been filed in accordance with Fed. R. App. P. 4(a), and the time within which an appeal may be noticed and filed has lapsed; or (iii) if a timely appeal has been filed, the appeal is finally resolved, with no possibility of further appellate or other review, resulting in final judicial approval of this Settlement.

2.12 "Escrow Account" means one or more separate escrow account(s) maintained by the Escrow Agent(s) into which the Fund will be deposited for the benefit of the Settlement Class until such time as the Fund is transferred and distributed pursuant to the terms of this Agreement.

2.13 "Escrow Agent" means a federally insured financial institution previously approved in such capacity by the Court as selected by Class Counsel, with reasonable right of refusal by Defendants, which shall receive and hold the Monetary Consideration under the terms of this Settlement Agreement.

2.14 "Final Approval Order" means the Final Approval Order and Judgment to be entered by the District Court in the Action finally approving this Settlement and resolving all issues between the Parties, as provided for in Section VIII below, substantially in the form attached hereto as "Exhibit 3."

2.15 "Final Fairness Hearing" means the hearing at which the District Court will consider and finally decide whether to approve this Settlement, enter Judgment, and make such rulings as are contemplated by this Settlement.

2.16 "Fund" means the following sums: (a) $39,000,000.00 to be paid by Landy, Asner, Gortenburg and Vittor in connection with (and as described in) this Agreement, of which Landy agrees to pay $23,000,000.00, Asner agrees to pay $7,500,000.00, Gortenburg agrees to pay $7,500,000.00, and Vittor agrees to pay $1,000,000.00, and which is inclusive of payments to Settlement Class Members, attorneys' fees and costs - for a total sum of $39,000,000.00.  The foregoing payments shall be several, not joint.

2.17 "Gortenburg" means Michael Gortenburg,; AG613, LLC; and Yukel Holdings, LLC.

2.18 "Internet Notice" means notice through the Internet website created pursuant to Section 5.3(c) of this Agreement.

2.19  "Landy" means Joshua Landy a/k/a Joshus Landy as well as Joshus S. Landy Revocable Trust, Joshus Landy Family Irrevocable Trust, Oceanside Breeze Holdings, LLC, Sunny Ridge Financial, LLC, and Creative Hills Holding, LLC.

2.20 "Landy Released Parties" means Landy a/k/a Joshus Landy, Joshus S. Landy Revocable Trust, Joshus Landy Family Irrevocable Trust, Oceanside Breeze Holdings, LLC, Sunny Ridge Financial, LLC, and Creative Hills Holding, LLC, individually and to the extent of their interests (directly or indirectly held) in any entity associated in any way with the Tribal Corporations; any and all other entities owned in whole or part by Landy; each of their related entities, controlling entities, entities under control, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and reorganized successors; and each of the former's current and former owners, members (including, but not limited to, member funds), directors, officers, managers, trusts, trustees, heirs, shareholders, employees, partners, contractors, joint-venturers, representatives, assigns, agents, lenders, insurers, reinsurers, administrators, and attorneys.

2.21 "NCOA" means the United States Postal Service's National Change of Address database.

2.22 "New Litigation" means the following case pending in the United States District Court for the Eastern District of Virginia: *Blackburn v. A.C. Israel Enterprises, Inc.*, Case No. 3:22-cv-00146 (DJN) (E.D. Va.).

2.23 "Outstanding Loans" means all loans with an outstanding balance originated by Golden Valley Lending, Inc., Silver Cloud Financial, Inc., and Majestic Lake Financial, Inc.; and all loans originated by Mountain Summit Financial, Inc. prior to February 1, 2021.

2.24 "Parties" means Defendants and Plaintiffs, on their own behalf and on behalf of the Settlement Class.

2.25 "Plaintiffs" means George Hengle; Sherry Blackburn; Willie Rose; Elwood Bumbray; Tiffani Myers; Steven Pike; Sue Collins; Lawrence Mwethuku; Regina Nolte; and Jo Ann Falash, individually and as representatives of the Settlement Class.

2.26 "Preliminary Approval Order" means an order to be entered by the District Court, as provided for in Section 7.1 below, substantially in the form attached hereto as "Exhibit 2."

2.27 "Released Claims" means the claims released by this Agreement as set forth in Section IV.

2.28 "Released Parties" means the Asner/Gortenburg Released Parties, the Landy Released Parties, the Tribal Released Parties, the Vittor Released Parties, both individually and collectively.  Notwithstanding any of the definitions herein, the Parties agree that A.C. Israel Enterprises, Inc., Richard Investors, LLC, Greg Warner, Ferrell Capital, LLC, Seville, Ltd., Monu Joseph, Joseph Investment, LLC, E Opportunities, LLC, Skye, LLC, Cabbage City, LLC, Kai Investments, LLC, Benjamin Gravley, Signal Light, LLC, Hymken, LP, George Kellner, Kellner Capital, LP, Jay Pack, Jeff Weiner, Amit Raizada, Spectrum Business Ventures, Raizada Group and any investor or shareholder in any of these entities are not Released Parties.

2.29 "Settlement" means the settlement set forth and identified in this Agreement.

2.30 "Settlement Class" means all consumers residing within the United States who executed loan agreements with Golden Valley Lending, Inc., Silver Cloud Financial,

11

Inc., and Majestic Lake Financial, Inc., or prior to February 1, 2021, from Mountain Summit Financial, Inc.

      2.31 "Settlement Class Member" means a person in the Settlement Class who does not timely submit a valid request for exclusion from the Settlement Class.

      2.32 "Taxes" means all taxes on income earned on the Fund (if any); taxes imposed on payments of the Fund, including withholding taxes; and reasonable expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, interest, penalties, and the reasonable expenses of tax attorneys and accountants).

      2.33 "Tribal Corporations" means Golden Valley Lending, Inc.; Silver Cloud Financial, Inc.; Majestic Lake Financial, Inc.; Mountain Summit Financial, Inc.; and Upper Lake Processing Services, Inc.

      2.34 "Tribal Officials" means Sherry Treppa; Tracey Treppa; Kathleen Treppa; Iris Picton; Sam Icay; Aimee Jackson-Penn; Amber Jackson; Jennifer Burnett; Carol Munoz; and Veronica Krohn.

      2.35 "Tribal Released Parties" means the Tribal Officials, their predecessors, and their successors, all in their official and individual capacities, and any of their trusts, trustees, heirs, assigns, lenders, insurers, reinsurers, and attorneys.

      2.36 "Vittor" means David Vittor and the David J. Vittor Trust.

      2.37 "Vittor Released Parties" means David Vittor and the David J. Vittor Trust, individually and to the extent of their interests (directly or indirectly held) in any entity associated in any way with the Tribal Corporations; any and all other entities owned in whole or part by Vittor; each of their related entities, controlling entities, entities under control, affiliates, subsidiaries, parent companies, predecessors-in-interest, successors, and

reorganized successors; and each of the former's current and former owners, members (including, but not limited to, member funds), directors, officers, managers, trusts, trustees, heirs, shareholders, employees, partners, contractors, joint-venturers, representatives, assigns, agents, lenders, insurers, reinsurers, administrators, and attorneys.

## III.   **TERMS OF THE SETTLEMENT**

3.1   <u>Class Certification.</u> Defendants dispute that a class would be manageable and further deny that a litigation class could be certified on the claims asserted in the Action. However, solely for purposes of avoiding the expense and inconvenience of further litigation, Defendants do not oppose the District Court's certification of the Settlement Class for settlement purposes only. No agreements made by Defendants in connection with this Agreement may be used by Plaintiffs, any Settlement Class Member, or any other person, to establish any of the elements of class certification in this or any other proceeding. Preliminary certification of a Settlement Class for settlement purposes shall not be deemed a concession that certification of a class is appropriate, nor are Defendants estopped or otherwise precluded from challenging class certification in further or other proceedings if this Settlement is not finally approved.

3.2   <u>Definition of the Settlement Class.</u> Solely for the purposes of this Settlement, the Parties agree to preliminary certification of the following Settlement Class:

> All consumers residing within the United States who executed loan agreements with Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Majestic Lake Financial, Inc., or prior to February 1, 2021, with Mountain Summit Financial, Inc.

Excluded from the Settlement Class are Class Counsel and their immediate family members and staff, and all judges and justices of the United States District Court for the Eastern District of Virginia, the United States Court of Appeals for the Fourth Circuit and the Supreme Court of the United States, as well as their immediate family members and staff.

Based on a review of their records, Tribal Officials estimate that, under this definition, the Settlement Class consists of approximately 555,000 Settlement Class Members.

Certification of the Settlement Class will be sought pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).  All Settlement Class Members shall have the right to exclude themselves by way of the opt-out procedure set forth in Section 7.2 of this Agreement and the Preliminary Approval Order.

       3.3   <u>Identification of the Settlement Class.</u> Tribal Officials will use their best efforts and business records to identify all Settlement Class Members. Within seven (7) days of entry of the Preliminary Approval Order, the Tribal Officials agree to provide the Administrator and Class Counsel with a list of names, email addresses, social security numbers (to the extent available), and mailing addresses of the Settlement Class as defined in the Preliminary Approval Order. Defendants' Counsel are also entitled to receive and review this information. The Tribal Officials also shall provide loan-level information regarding each class member's loan(s) sufficient to demonstrate the original principal balance of the loan, the amount of any payments the class member made on the loan, and the outstanding balance, as well as any other loan-level information reasonably requested by Class Counsel for purposes of effectuating the Settlement. Class Counsel shall have seven (7) business days to review and approve the list of Settlement Class members, the criteria used by the Tribal Officials to identify Settlement Class Members, and the loan-level data, or to notify the Tribal Officials of any objections to its completeness.  Any recipients of this information will be required to provide assurances that they will protect this data, in a form agreed to by Tribal Officials and any recipients.

3.4   <u>Settlement Consideration.</u> Pursuant to this Agreement, as full and complete consideration for the releases set forth below, Defendants will implement the relief set forth in Section 3.4 as follows:

a.   **Prospective Relief from Tribal Officials**

i.   <u>Cancellation of Debt and Injunctive Relief.</u>  Within thirty (30) days after the Effective Date, with respect to the Outstanding Loans, the Tribal Officials agree to reduce the balance due on each such loan to zero on the basis that the debt is disputed. The Tribal Officials estimate that this will result in the cancellation of approximately $450 million in outstanding debt.  Within sixty (60) days after the Effective Date, the Administrator shall forward to each Settlement Class Member with such a loan a letter from the Tribal Officials, in a form approved by Plaintiffs and the Tribal Officials, confirming that no further payments are due on such loan.

ii.   <u>No Sale or Attempt to Enforce Outstanding Loans.</u>  As of March 1, 2022, the Tribal Officials further agree that they will not sell, transfer, or assign for collection any Outstanding Loans and that they will cease all direct or indirect collection activity on Outstanding Loans. To the extent any amounts are inadvertently collected after March 3, 2022, the Tribal Officials will remit the funds back to the borrower. The Tribal Officials shall certify their compliance with this provision in declarations to be filed with the Court within 14 days after Preliminary Approval and at least 14 days before the Final Approval Hearing. Such declarations shall not

disclose any information concerning specific borrowers, but shall detail the method, number, aggregate amount, and timing of refunds made.

iii.  <u>The Outstanding Loans are Disputed Debts.</u>  Plaintiffs and the Tribal Officials agree that the Outstanding Loans are disputed debts. If judgments regarding Outstanding Loans originated during the class period by the Tribal Officials or the Tribal Corporations to Settlement Class Members, the Tribal Officials agree to notify the relevant courts that the judgments are satisfied within sixty (60) days after the Effective Date.

iv.  <u>Negative Tradeline Deletion Request.</u>  Within thirty (30) days after the Effective Date, the Tribal Officials shall contact all consumer reporting agencies ("CRAs") to which they or the Tribal Corporations previously had reported information regarding loans originated during the class period and request permanent removal of any negative tradelines previously reported to consumer reporting agencies in the name of the Tribal Officials or the Tribal Corporations regarding loans originated during the class period by the Tribal Corporations to Settlement Class Members. A tradeline shall be considered "negative" if it indicates that any payment due was missed.  Tribal Officials shall request that all other tradelines be reported as paid in full with no negative history. Plaintiffs acknowledge that they understand, on behalf of themselves and the Settlement Class Members, that it may take up to 30 days for this update to be reflected on their credit reports. Plaintiffs acknowledge that they understand, on behalf of themselves and the Settlement Class Members,

that the Tribal Officials' responsibilities, as set forth in this Section 3.4(a)(iv), shall constitute the sole requirements imposed on the Tribal Officials under this Agreement with respect to credit reporting. Plaintiffs acknowledge that they understand, on behalf of themselves and the Settlement Class Members, that the Tribal Officials do not control the actions of the CRAs and, thus, the Tribal Officials may only request that the CRAs make updates as set forth in Section 3.4(a)(iv).

v.   Personal Identifying Information.   The Tribal Officials have agreed as of March 1, 2022, not to sell or transfer for commercial purpose to any third party personal identifying information obtained from Settlement Class Members during the class period to third parties.

b.   **Monetary Consideration**

i.   Landy agrees to pay $23,000,000.00; Asner agrees to pay $7,500,000.00; Gortenburg agrees to pay $7,500,000.00; and Vittor agrees to pay $1,000,000.00 to the Fund as monetary consideration for the settlement attributable to the revenue realized on the loan participations funded by such Defendants and to compensate members of Settlement Class for amounts class members paid in excess of the principal they borrowed, for a total of $39,000,000.00.   Such payments are several, not joint.   No individual Defendant shall be responsible for any portion of another individual Defendant's payment.

ii.   In addition to and apart from the Fund, the Tribal Officials agree to separately pay the full costs of Notice and Administration, up to

$1,000,000.00, and up to $7,500.00 per Class representative towards any Service Awards approved by the Court and in an amount not to exceed a gross amount of $75,000.00.

iii.  <u>Payments into the Escrow Account.</u> Monies will be placed into the Escrow Account, by wire payment, as follows:

1. Landy shall make his payment into the Escrow Account in two installments: the first installment of $11,500,000.00 shall be paid by Landy within ten (10) days after the Effective Date; the second installment of $11,500,000.00 shall be paid by Landy no later than thirty (30) days after the Effective Date;

2. Asner, Gortenburg, and Vittor shall each make payments of $7,500,000, $7,500,000, and $1,000,000 respectively, into the Escrow Account no later than ten (10) days after the Effective Date;

3. The Tribal Officials shall pay the amount required to pay Service Awards approved by the Court, up to $75,000.00, into the Escrow Account no later than ten (10) days after the Effective Date.

4. There shall be no reverter of any monies paid into the Fund.

iv.  <u>Payments from the Escrow Account.</u>  The funds from the Escrow Account shall be distributed as follows:  first, to pay any amount of service awards to Plaintiffs approved by the District Court and attorneys' fees and costs awarded by the District Court; second, to pay any other costs, fees, or expenses, including any costs of notice and administration above $1,000,000; and third, to pay Cash Awards.  Cash Awards to eligible

Settlement Class Members shall be determined based on the following claim amounts:

Tier 1:  The dollar amount of all payments made by each Settlement Class Member in Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, South Dakota, Vermont, Virginia, and Wisconsin so long as the Settlement Class Member paid the principal amount of his or her loan.

Tier 2:  The dollar amount of payments made above the legal interest limits if the original principal amount was repaid and if the Settlement Class Member resided in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Washington, Washington D.C., West Virginia, or Wyoming at the time the Settlement Class Member took out the loan; and

Tier 3:  Settlement Class Members in Nevada and Utah will not receive cash payments.

For each Settlement Class Member who took out more than one loan during the class period, his or her Claim Amount shall be calculated by determining the Claim Amount for each loan and adding them together.

v.   Distributions to the Settlement Class.  Cash Awards shall be calculated and distributed to the Settlement Class Members as follows:

1.   *Pro Rata* Calculations.  Each Settlement Class Member who repaid the principal amount borrowed and is in Tier 1 or Tier 2, shall be entitled to a Cash Award based on a *pro rata* calculation. After calculation, Cash Awards shall be rounded down to the nearest cent. Cash Awards will be paid to Settlement Class Members only if their calculated Cash Award is equal to or greater than two dollars ($2.00).

19

2. <u>Payment of Cash Awards.</u> Within 60 days after the Effective Date, the Administrator shall mail to each Settlement Class Member a check in the amount of such Settlement Class Member's Cash Award at the most recent address shown in the Tribal Officials' electronic records or identified by the Administrator using the NCOA or any equivalent database, or to any updated address provided by the Settlement Class Member to the Administrator. Settlement Class Members shall be advised that the checks must be deposited or cashed within ninety (90) days of the postmarked date. On the forty-fifth (45th) day following the mailing of all Cash Awards, the Administrator shall email all Settlement Class Members receiving a Cash Award a reminder to cash the check. After ninety (90) days from the date of mailing, each Cash Award check shall become void.

3. <u>Remaining Funds.</u> After the void date has passed, the Parties and the Administrator shall confer regarding the disposition of uncashed settlement payments. Specifically, the Parties and the Administrator shall determine whether it is reasonable and feasible to make a second distribution to Settlement Class Members who cashed their initial checks. If it is determined by the Parties and the Administrator that it is reasonable and feasible, the Settlement Administrator shall distribute the remaining Fund using the same procedure detailed in Sections 3.4(c)(iii)(1)–(5), except that second distribution payments shall not be made in amounts less than ten dollars ($10.00) to those

Class Members who cashed their first check. If any residual funds remain in the Fund after the second distribution, then such residual funds shall be paid, with the approval of the District Court pursuant to the *cy pres* doctrine, to the National Consumer Law Center.

vi. <u>Monthly Reports Regarding Distribution of the Fund.</u>   The Administrator will provide monthly reports to the Parties on the distribution of the Fund until such time as the Fund is fully paid to eligible recipients and depleted or distributed as set forth in this Section 3.4(c) and Section 5.2. The Administrator also shall notify counsel to the Parties in writing when settlement administration has been completed.

c. **<u>Other Consideration</u>**

i. <u>Withdrawal of Petitions for Writ of Certiorari.</u>   The Tribal Officials, Landy, and Asner agree that they will not oppose Plaintiffs' filing of an additional motion to extend the time for their response to the petitions for certiorari, which may cite the parties' settlement negotiations and which may request that a response date be set for a date after the preliminary approval of this Agreement.  If the U.S. Supreme Court refuses to grant an extension, the Tribal Officials, Landy, and Asner will withdraw or dismiss the petitions for certiorari to the United States Supreme Court, provided the Parties have a signed Agreement in place at that time. If the District Court grants preliminary approval of the Settlement, the Tribal

Officials, Landy, and Asner agree to withdraw their petitions within three (3) days of the entry of the preliminary approval order.

ii.   <u>Production of Certain Documents.</u> Subject to confirmation by the Tribal Officials, Landy and Asner agree to produce to Plaintiffs copies of the documents highlighted on their privilege logs (as previously negotiated by Plaintiffs and Landy and as previously negotiated by Plaintiffs and Asner), within five (5) days after the execution of this Agreement, but subject to Plaintiffs' agreement that they will not assert that by producing those documents any Defendants have waived privilege or work product protections (including any subject matter waiver).  Defendants further agree that Plaintiffs can use previously produced documents in this Action for use in the New Litigation or other matters that Class Counsel may bring on behalf of the Settlement Class directly related to the causes of action raised in the New Litigation, provided their confidentiality designations are maintained and a comparable protective order governs therein. If a protective order has not yet been entered in a case and Plaintiffs need to use certain documents, Plaintiffs agree to work with Defendants to file such documents in a redacted version or under seal.

iii.   <u>Discovery in the New Litigation.</u>  If Plaintiffs request discovery from the Tribal Officials, Landy, Asner/Gortenburg, or Vittor Released Parties in connection with the New Litigation, then, without waiving claims of privilege or other objections and while retaining the right and ability to seek any appropriate relief to the full extent permitted by the Federal

Rules of Civil Procedure, the Federal Rules of Evidence, and the local rules of the Court, Tribal Officials, Landy, Asner, Gortenburg, and Vittor agree to: (1) accept service of subpoenas in the New Litigation through counsel designated in Section 11.15; and (2) not contest the jurisdiction of the United States District Court for the Eastern District of Virginia to adjudicate any dispute related to subpoenas in the New Litigation.

iv.   <u>Representations by Plaintiffs and Class Counsel.</u>  Plaintiffs and Class Counsel are aware of no facts to indicate that the Landy, Asner/Gortenburg, or Vittor Released Parties have had any involvement in any way with the loan products that the Tribal Officials and/or Tribal Corporations have been offering since February 1, 2021.  Class Counsel acknowledges that they have not been contacted by any consumer that has any claim against the Tribal Officials, Landy, Asner/Gortenburg, or Vittor Released Parties related to any loan offered on or after February 1, 2021. Plaintiffs and Class Counsel acknowledge that Asner and Landy have made production of documents in response discovery requests in the Action. Without waiving their right to further requests, Plaintiffs and Class Counsel acknowledge that they do not presently know of other documents they could not obtain directly from the Defendants in the New Litigation and would not anticipate a need for further documents from Landy or Asner in connection with the New Litigation (other than as set forth in section 3.4(c)(i) above) absent learning of same.

v.   <u>Loan-Level Data in Other Matters.</u>  The Tribal Officials agree to provide loan-level data (and the necessary authentication of such data pursuant to the Federal Rules of Evidence) regarding the members of any class that Class Counsel may seek to certify in the future against A.C. Israel Enterprises, Inc., Richard Investors, LLC, Greg Warner, Ferrell Capital, LLC, Seville, Ltd., Monu Joseph, Joseph Investment, LLC, E Opportunities, LLC, Skye, LLC, Cabbage City, LLC, Kai Investments, LLC, Benjamin Gravley, Signal Light, LLC, Hymken, LP, George Kellner, Kellner Capital, LP, Amit Raizada, Spectrum Business Ventures, and/or the Raizada Group. Plaintiffs acknowledge that the production of such data will be made subject to appropriate protections for confidentiality as well as in accordance with federal laws regarding personal identifying information, including those set forth in stipulated orders in the Action.

3.5   <u>Plaintiffs' Service Awards.</u>  No later than thirty (30) days before the Final Fairness Hearing, Plaintiffs may apply to the District Court for Plaintiffs' service awards of $10,000.00 each, totaling $100,000.00. The Plaintiffs' service awards will be paid first from the amount contributed by the Tribal Officials pursuant to Section 3.4(b)(ii) and then from the Fund in the amounts approved by the District Court. The Settlement is not conditioned upon the District Court's approval of the service awards sought by Plaintiffs. The service awards, if any, shall be paid to Plaintiffs no earlier than the Effective Date and no later than fourteen (14) days after the Effective Date.

3.6    <u>Attorneys' Fees and Costs.</u>  No later than thirty (30) days before the Final Fairness Hearing, Plaintiffs may apply to the District Court for an award of attorneys' fees and costs not to exceed one third of the Fund. Such attorneys' fees and costs will be paid from the Fund in an amount not to exceed $13,000,000.00 and as approved by the District Court.  The Settlement is not conditioned upon the District Court's approval of the attorneys' fees and costs sought by Plaintiffs. The award of attorneys' fees and costs, if any, shall be paid to Class Counsel no earlier than the Effective Date and no later than fourteen (14) days after the Effective Date.

3.7    <u>Costs of Notice and Administration.</u>  All costs of notice and administration are to be paid directly by the Tribal Officials. Under no circumstances will Landy, Asner, Gortenburg, or Vittor be responsible to pay additional costs or any other consideration beyond or separate from the amount of each of their respective contributions to the Fund.  In no event shall the Tribal Officials be required to pay more than $75,000 and the costs of notice and administration up to $1,000,000.

3.8    <u>Total Payments to the Fund by Defendants.</u>  In no event shall Landy be required to pay any more than $23,000,000.00; in no event shall Asner be required to pay more than $7,500,000.00; in no event shall Gortenburg be required to pay any more than $7,500,000.00; and in no event shall Vittor be required to pay more than $1,000,000.00 pursuant to this Agreement, inclusive of (i) the amount of the Fund as monetary consideration to the Settlement Class; (ii) Class Counsel's attorneys' fees and/or litigation costs; and (iii) any other fees or costs associated with this Settlement.

## IV.    **RELEASES AND DISMISSAL**

4.1    <u>Release.</u>  Upon the Effective Date of this Settlement, the following releases shall be effective:

a.      The Tribal Officials. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally, and forever released the Tribal Released Parties, in their individual and official capacities, of any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown that could have been brought against them by Settlement Class Members related in any way to the loans described in subsection 1(a) above (the "Releases").

b.      Landy Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally and forever released and discharged the Landy Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees,

expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Landy Released Parties.

c.      Asner/Gortenburg Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have, fully, finally, and forever released and discharged the Asner/Gortenburg Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices

27

laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Asner/Gortenburg Released Parties.

d.      Vittor Released Parties. Each Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have, fully, finally, and forever released and discharged the Vittor Released Parties from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected

or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent of fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action or the New Litigation, as well as including any claims known or unknown that each Settlement Class Member has or ever had against the Vittor Released Parties.

e.      The releases set forth in the immediately preceding paragraphs constitute a waiver of Section 1542 of the California Civil Code and any similar or comparable provisions, rights, and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law, which provide: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.  Plaintiffs and each Settlement Class Member understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases. In connection with such waivers and relinquishment, Plaintiffs and each Settlement Class Member acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which

they now know or believe to be true with respect to the subject matter of the Settlement, but that they release fully, finally and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts.

f.      For the avoidance of doubt, neither this Settlement Agreement nor the Releases applies to any claims or causes of action against third parties, including but not limited to A.C. Israel Enterprises, Inc., Richard Investors, LLC, Greg Warner, Ferrell Capital, LLC, Seville, Ltd., Monu Joseph, Joseph Investment, LLC, E Opportunities, LLC, Skye, LLC, Cabbage City, LLC, Kai Investments, LLC, Benjamin Gravley, Signal Light, LLC, Hymken, LP, George Kellner, Kellner Capital, LP, Jay Pack, Jeff Weiner, Amit Raizada, Spectrum Business Ventures, Raizada Group or any investor or shareholder in any of these entities

4.2    <u>Scope of Release.</u>   The releases in Section 4.1 shall apply to Plaintiffs and all Settlement Class Members as of the Effective Date of this Settlement. Any Settlement Class Members who do not wish to be subject to these releases shall have the right to exclude themselves by way of the general opt-out procedures set forth in Section 7.2 of this Agreement and the Preliminary Approval Order.

4.3    <u>Dismissal.</u>   Within fourteen (14) days of the Effective Date of this Agreement, the Parties shall file appropriate documents requesting dismissal with prejudice of David Vittor and the David J. Vittor Trust from the New Litigation.  Upon entry of the Final Approval Order in this Action (and consistent with the terms therein), the Action and all Released Claims of Settlement Class Members shall be dismissed with prejudice, except as otherwise provided in the Final Approval Order or in the Agreement, without costs to any party.

## V.    NOTICE AND SETTLEMENT ADMINISTRATION

5.1    Settlement Administrator.    Subject to approval by the District Court, the Administrator shall be responsible for administering the Settlement in accordance with this Agreement and applicable orders from the Court. The Administrator may disburse money from the Fund only in accordance with this Agreement and applicable orders of the Court. The actions of the Administrator shall be governed by the terms of this Agreement. The Parties shall provide information reasonably requested by the Administrator pursuant to this Agreement.

5.2    Costs of Notice and Administration.    The costs of notice and administration of the Settlement, including all costs related to providing class notice as described below and any second distribution to Class Members, shall be paid entirely by the Tribal Officials.

5.3    Class Notice.    Notice consistent with the due process requirements of Fed. R. Civ. P. 23 shall be provided within thirty (30) days following entry of the Preliminary Approval Order, as follows:

a.    Direct Notice, substantially in the form attached hereto as Exhibit 1 or as modified by the District Court with the consent of all Parties, will be sent via electronic mail (email) to Settlement Class Members within thirty (30) days after the date of entry of the Preliminary Approval Order at the most recent email address shown in the Tribal Officials' electronic records, as maintained in the ordinary course of business, for the loan at issue.

b.    Direct Notice, substantially in the form attached hereto as Exhibit 1 or as modified by the District Court with the consent of all Parties, will be mailed, via first class mail, to Settlement Class Members whose email notice results in a bounce-back email. Mailing addresses will be run once through the NCOA, or any

31

other postal address verification database that the Administrator deems proper, prior to mailing. Returned Direct Notices will be re-mailed if they are returned within twenty (20) days of the postmark date of the Direct Notice and contain a forwarding address. No further e-mailed or mailed notice shall be required except as otherwise expressly provided herein.

c.      The Administrator will establish and maintain an Internet site, using a domain name approved by all Parties, on which will be posted the Direct Notice as well as the Class Action Complaint; this Agreement; any motions and memoranda seeking approval of this Settlement, approval of attorneys' fees and costs, or approval of Named Plaintiffs' service awards; any orders of the District Court relating to this Settlement; and any other information the Parties believe necessary and appropriate. The Direct Notice shall direct recipients to the location of the Internet site. The website shall make available a form that allows Settlement Class Members to update their mailing addresses; Settlement Class Members may also contact the Administrator by telephone or mail to update their mailing addresses. Within sixty (60) days after entry of the Preliminary Approval Order, the website shall allow Class Members to determine whether or not they are eligible for a Cash Award by entering their unique identifier (provided on the Direct Notice or available by calling the Administrator) and last name. The website shall become active within ten (10) days after the District Court's entry of the Preliminary Approval Order and shall remain active until at least 30 days after administration of the Settlement has concluded. The Parties shall have the right to audit the work of the Claims Administrator at any time.

d.      Defendants shall ensure compliance with the notice provisions of the Class Action Fairness Act ("CAFA"), and approval dates will be set in accord with CAFA.

5.4     <u>Certification to the District Court</u>.  No later than thirty (30) days before the Final Fairness Hearing, the Administrator and/or its designees shall file a declaration with the District Court verifying that notice has been provided to the Settlement Class in accordance with this Agreement and the District Court's Preliminary Approval Order.

## VI.      <u>DISPUTE RESOLUTION</u>

6.1     <u>Dispute Resolution.</u>  The Parties agree to meet and confer in good faith in regard to any dispute relating to this Settlement or to administration of this Settlement. Any dispute that cannot be resolved by the Parties shall be submitted, not earlier than thirty (30) days after written notice of the dispute was first given, with: (1) Magistrate Judge Colombell if the dispute is with Tribal Officials; or (2) Nancy Lesser or her designee if the dispute is with Landy, Asner, Gortenburg or Vittor for a written recommendation as to a resolution. In the event any Party disagrees with the written recommendation, the Party must file a motion in the Action to address the issue within ten (10) days of receiving the recommendation.

## VII.     <u>PRELIMINARY APPROVAL ORDER AND FINAL FAIRNESS HEARING</u>

7.1     <u>Preliminary Approval Order.</u>  Class Counsel will seek the District Court's approval of this Settlement by filing an appropriate Motion for Preliminary Approval and seeking entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit 2.

7.2     <u>Opt-Out/Requests for Exclusion from Settlement.</u>

a.      <u>Requests for Exclusion.</u>  Prospective Settlement Class Members shall be given the opportunity to opt out of the Settlement Class. All requests by prospective

Settlement Class Members to be excluded must be in writing and mailed to the Administrator, postmarked no later than forty-five (45) days before the Final Approval Hearing. An appropriate written request for exclusion can be found on the website in the form of Exhibit 4 or must be personally signed by the prospective Settlement Class Member and must include: (i) the name of this Action; (ii) the prospective Settlement Class Member's name, address and telephone number; and (iii) the following statement: "I request to be excluded from the class settlement in this case."  No Settlement Class Member, or any person acting on behalf of or in concert or participation with that Settlement Class Member, may exclude any other Settlement Class Member from the Settlement Class.

b.      <u>Delivery to Parties/Filing with District Court.</u>  The Administrator shall provide copies of the original requests for exclusion to the Parties by no later than five (5) days after the opt-out deadline. Not later than twenty-one (21) days before the Final Fairness Hearing, the Administrator shall file with the District Court a declaration that lists all of the opt-outs received.

c.      <u>Effect.</u>  All prospective Settlement Class Members who timely exclude themselves from the Settlement Class will not be eligible to receive any consideration pursuant to this Agreement and will not be bound by any further orders or judgment in this Action and will preserve their ability to independently pursue any individual claims they may have against the Released Parties. In the event of ambiguity as to whether a Settlement Class Member has requested to be excluded, the Settlement Class Member shall be deemed not to have requested exclusion.

7.3   Objections to Settlement.

a.      Right to Object.   Any Settlement Class Member who has not previously opted out as provided in Section 7.2 may appear at the Final Fairness Hearing to argue that the Agreement should not be approved and/or to oppose the service awards to  Plaintiffs. Any Settlement Class Member who wishes to object to the Agreement must file a written objection with the District Court no later than the date specified by subsection (b) of this section. Settlement Class Members who fail to timely file and serve written objections shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to this Agreement.

b.      Deadline.   Any such objection must be filed or submitted by mail to the District Court in a writing postmarked no later than forty-five (45) days before the Final Approval Hearing. Copies of all objections must also be mailed or e-mailed to the Administrator, who shall forward by email immediately upon receipt copies of the objections and all related papers to counsel for the Parties.

c.      Content of Objections.   All objections must include: (i) the name of this Action; (ii) the objector's name, address and telephone number; (ii) a sentence confirming that he or she is a Settlement Class Member; (iii) any factual basis and legal grounds for the objection to the Agreement; and (iv) a list of any prior cases in which the objector's counsel have objected to a class settlement. Counsel representing an objecting Settlement Class Member must enter an appearance in this Action.

d.      The right to object to the Settlement must be exercised individually by a Settlement Class Member or through his or her attorney, and not as a member of a group, class, or subclass.

## VIII.  <u>FINAL APPROVAL OF SETTLEMENT AND OTHER CONDITIONS</u>

8.1     <u>Final Approval Order.</u>  On a date to be set by the District Court, Plaintiffs will petition the District Court to enter the Final Approval Order in this Action in the form attached as Exhibit 3. The Final Approval Order that the Parties propose to the District Court will provide:

a.      That the Action, for purposes of this Agreement, may be maintained as a class action on behalf of the Settlement Class;

b.      That Plaintiffs fairly and adequately represent the interests of the Settlement Class;

c.      That Class Counsel fairly and adequately represent Plaintiffs and the Settlement Class;

d.      That the Direct Notice and Internet Notice satisfy the requirements of due process, the Federal Rules of Civil Procedure and any other applicable laws;

e.      That the Agreement is fair, reasonable, and adequate to the Settlement Class and that each Settlement Class Member shall be bound by the Agreement, including the releases contained in Section IV above;

f.      That the Agreement represents a fair resolution of all claims asserted on behalf of the Settlement Class and fully and finally resolves all such claims;

g.      That this Agreement should be, and is, approved;

h.      The amounts of Plaintiff service awards;

i.      Confirmation of the opt outs from the Agreement;

j.      Overruling of objections, if any;

36

k.      Dismissal of the Action, on the merits and with prejudice, of all claims and an injunction prohibiting all Settlement Class Members or their representatives or privies from bringing, joining, or continuing to prosecute against the Released Parties any Released Claims and entering judgment thereon; and

l.      Retention of jurisdiction of all matters relating to the modification, interpretation, administration, implementation, effectuation and enforcement of this Agreement.

## IX.    <u>TERMINATION OF SETTLEMENT</u>

9.1    <u>Non-Approval of Settlement.</u>  If the District Court declines to preliminarily or finally approve, or requires material modification of the Agreement, the Parties shall request that the Action be stayed as to Defendants for a period of thirty (30) days to allow the Parties to meet and confer in good faith with regard to how to address any questions raised and/or changes required by the District Court, including whether to accept the Agreement as modified by the District Court or modify the Agreement for resubmission to the District Court for approval. If within thirty (30) days after entry of the District Court's order denying preliminary or final approval or requiring material modification of the Agreement, the Parties do not agree to accept the Agreement as modified by the District Court or fail to agree to modify the Agreement for resubmission to the District Court for approval, any Party may unilaterally terminate the Agreement by providing written notice of this election to all Parties. In such an event, nothing in this Agreement or filed in connection with seeking settlement approval shall be construed as an admission or concession of any fault, wrongdoing, or liability of any kind, nor are Defendants estopped or otherwise precluded from challenging any of the allegations in further proceedings in the Action or any other action. Moreover, the Parties shall be deemed to have preserved all of their rights or defenses as of the date that Plaintiffs initiated the Action and shall not be deemed to have waived any substantive or

procedural rights of any kind that they may have as to each other or any member of the Settlement Class. Likewise, in the event that this Agreement is approved without material modification by the District Court, but is later reversed or vacated on appeal, each of the Parties shall have the right to withdraw from this Agreement and return to the *status quo ante* as of the date that Plaintiffs initiated the Action for all litigation purposes, as if no agreement had been negotiated or entered into, and shall not be deemed to have waived any substantive or procedural rights of any kind that they may have as to each other or any member of the Settlement Class.

        9.2   <u>Right to Withdraw for Excessive Opt-Outs</u>.   If the number of Settlement Class Members who request exclusion exceeds 5% of the Settlement Class, any one of the Defendants may withdraw from this Agreement in his, her, or its sole discretion and the Plaintiffs and such withdrawing Defendant(s) shall be returned to the status quo ante as to such withdrawing Defendant(s) as of the time that Plaintiffs initiated the Action for all litigation purposes, as if no settlement had been negotiated or entered into with such withdrawing Defendant(s).  If one or more of the Defendants exercises this right to withdraw from this Agreement, it shall provide Class Counsel with written notice of this election no later than twenty days after the opt-out deadline. The withdrawal of a Defendant from this Settlement pursuant to this section shall not affect the Settlement's validity, enforceability, or terms as to the remaining Parties.

## X.    **TAX TREATMENT OF THE FUND**

        10.1   The dollar amounts of the Fund held in the Escrow Account shall be deemed to be in the custody of the Court until the Effective Date. After that date, the funds in the Escrow Account shall belong to the beneficiaries of the Settlement, for the payment of attorney's fees and costs, taxes (if any), Plaintiffs' service awards, and funding of Cash Awards to Settlement Class Members. Such funds shall not escheat and shall remain subject to the jurisdiction of the Court

until such time as the money in the Fund shall be disbursed pursuant to the terms of this Agreement, or further Order of the Court.

      10.2   The Fund shall be established and maintained in accordance with Treasury Regulation §1.468B-1 et seq. by the Settlement Administrator subject to the terms of this Agreement and the Court's preliminary and final approval orders. The Parties agree that the Escrow Account is intended to be maintained as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. The Settlement Administrator shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the sole responsibility of the Settlement Administrator to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to occur.

      i.   For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B promulgated thereunder, the "administrator" shall be the Settlement Administrator, who shall be responsible for timely and properly filing, or causing to be filed, all informational and other federal, state, or local tax returns necessary or advisable with respect to the earnings on the Fund deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Those tax returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect

that all Taxes (including any estimated taxes, earnings, or penalties) on income earned on the Funds deposited in the Escrow Account (if any) shall be paid out as provided in this Agreement. Notwithstanding this obligation, the Parties agree that the Fund will not earn income.

ii.   All Taxes shall be paid by the Escrow Agent out of the Settlement Fund.

iii.   Taxes (if any) shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Fund without prior order from the Court, and the Escrow Agent and the Settlement Class Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to eligible Settlement Class Members any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(1)(2)).

iv.   Settlement Class Members shall provide any and all information that the Settlement Class Administrator may reasonably require or that is required by applicable law regarding Taxes and filings and reporting for Taxes, before any distributions are made to Settlement Class Members as contemplated hereby, and the Settlement Class Administrator may, without liability to the Settlement Class Members, delay those distributions unless and until such information is provided in the form required by the Settlement Class Administrator. The Settlement Class Administrator shall take all reasonable steps to minimize the disclosure and submission burden on Settlement Class Members.

## XI.   **MISCELLANEOUS PROVISIONS**

11.1   <u>Further Assurance.</u>  Each of the Parties shall execute all documents and perform all acts necessary and proper to effectuate the terms of this Agreement.

11.2   <u>No Admission of Liability.</u>  It is expressly recognized and accepted by Plaintiffs that Defendants, Landy Released Parties, the Asner/Gortenburg Released Parties, the Tribal Released Parties, and the Vittor Released Parties deny any liability and that Defendants are settling solely to avoid the cost and inconvenience of litigation.

11.3   <u>Evidentiary Preclusion.</u>   Neither this Agreement, nor any act performed or document executed pursuant to or in furtherance of the Agreement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim, or of any wrongdoing or liability of Defendants, the Landy Released Parties, the Asner/Gortenburg Released Parties,  the Tribal Released Parties, and the Vittor Released Parties; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendants, the Landy Released Parties, the Asner/Gortenburg Released Parties, the Tribal Released Parties, and the Vittor Released Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. In addition, except for purposes of demonstrating the validity of this Agreement or its terms, neither the fact of, nor any documents relating to, any Defendant's withdrawal from the Agreement, any failure of the District Court to approve the Agreement, and/or objections or interventions may be used as evidence for any purpose whatsoever. Defendants, the Landy Released Parties, the Asner/Gortenburg Released Parties, the Tribal Released Parties, and the Vittor Released Parties may file this Agreement in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or

reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

  11.4 <u>Consent to Jurisdiction for Enforcement.</u> Defendants agree that for settlement purposes only, and without waiving any objections or arguments in this or any other case, including as to subject-matter jurisdiction and personal jurisdiction, to submit to the jurisdiction of the United States District Court for the Eastern District of Virginia for the sole purpose of enforcement of the Agreement.

  11.5 <u>Entire Agreement.</u>  This Agreement constitutes the entire agreement between and among the parties with respect to the settlement of the Action as to Defendants. This Agreement supersedes all prior negotiations and agreements. The Parties, and each of them, represent and warrant that no other party or any agent or attorney of any of the Parties has made any promise, representation, or warranty whatsoever not contained in this Agreement and the other documents referred to in this Agreement to induce them to execute the same. The Parties, and each of them, represent and warrant that they have not executed this Agreement, or the other documents referred to in this Agreement, in reliance on any promise, representation or warranty not contained in this Agreement and the other documents referred to in this Agreement.

  11.6 <u>Confidentiality.</u>  Subject to order of the District Court, any and all drafts of this Agreement and other settlement documents relating to the negotiations between the Parties will remain confidential and will not be disclosed or duplicated except as necessary to obtain preliminary and/or final court approval. This provision will not prohibit the Parties from submitting this Agreement to the District Court in order to obtain preliminary and/or final approval of the settlement.

11.7 <u>Successors and Assigns.</u>  This Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, and assigns of the Parties.

11.8 <u>Immediate Suspension of Proceedings.</u>  The Parties agree to stay the Action as to Defendants. The Parties shall request that the Action be stayed to allow the Settlement to be completed, maintaining the procedural posture of the case pending final approval.

11.9 <u>Competency of the Parties.</u>  The Parties, and each of them, acknowledge, warrant, represent, and agree that in executing and delivering this Agreement, they do so freely, knowingly, and voluntarily, that they had an opportunity to and did discuss its terms and their implications with legal counsel of their choice, that they are fully aware of the contents and effect of this Agreement, and that such execution and delivery is not the result of any fraud, duress, mistake, or undue influence whatsoever.

11.10 <u>Authority.</u>  Each Plaintiff and each Defendant warrants that he or she is authorized to sign this Agreement.

11.11 <u>Modification.</u>  No modification of or amendment to this Agreement shall be valid unless it is in writing and signed by all Parties hereto or agreed to on the record in the District Court.

11.12 <u>Construction.</u>  Each of the Parties has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of this Agreement, the Agreement shall not be construed against any of the Parties. Before declaring any provision of this Agreement invalid, the District Court shall first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedent so as to find all provisions of this Agreement valid and enforceable. After applying this rule of construction and still finding a provision invalid, the District Court shall thereupon interpret the invalid provision to the fullest extent possible to

otherwise enforce the invalid provision. The invalidity of any one provision shall not render this Agreement otherwise invalid and unenforceable unless the provision found to be invalid materially affects the terms of this Agreement after application of the rules of construction set forth in this paragraph.

11.13  <u>No Waiver.</u>  The failure of any of the Parties to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, or any other provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any of the Parties thereafter to enforce that provision or each and every other provision. No waiver of any breach of this Agreement shall constitute or be deemed a waiver of any other breach.

11.14  <u>Governing Law.</u>  This Agreement shall be governed by, construed, and enforced in accordance with the laws of the Commonwealth of Virginia, including all matters of construction, validity, performance, and enforcement and without giving effect to the principles of conflict of laws.

11.15  <u>Notices/Communications.</u>  All requests, demands, claims, and other communications hereunder shall: (a) be in writing; (b) delivered by U.S. mail and electronic mail; (c) be deemed to have been duly given on the date received; and (d) be addressed to the intended recipient as set forth below:

> <u>If to Plaintiffs or the Settlement Class:</u>
>
> Kristi C. Kelly
> 3925 Chain Bridge Road, Suite 202
> Fairfax, Virginia 22030
> email: kkelly@kellyguzzo.com
>
> <u>If to the Tribal Officials:</u>
>
> Rakesh Kilaru
> 2001 M Street, NW
> 10th Floor
> Washington, DC 20036

rkilaru@wilkinsonstekloff.com

If to Landy:

Thomas J. Perrelli
1099 New York Avenue NW
Suite 900
Washington, DC 20001-4412
TPerrelli@jenner.com

If to Asner:

Robert B. Gilmore
Stein Mitchell Beato & Missner LLP
901 15th Street, NW, Suite 700
Washington DC 20005
rgilmore@steinmitchell.com

If to Gortenburg:

Robert B. Gilmore
Stein Mitchell Beato & Missner LLP
901 15th Street, NW, Suite 700
Washington DC 20005
rgilmore@steinmitchell.com

If to Vittor:

Robert B. Gilmore
Stein Mitchell Beato & Missner LLP
901 15th Street, NW, Suite 700
Washington DC 20005
rgilmore@steinmitchell.com

Each of the Parties may change the address to which requests, demands, claims, or other communications hereunder are to be delivered by giving the other Parties notice in the manner set forth herein.

11.16   Counterparts.   This Agreement may be executed in one or more counterparts and, if so executed, the various counterparts shall be and constitute one instrument for all purposes and shall be binding on each of

45

the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement. For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

11.17 <u>Cooperation.</u>  The Parties, and their respective counsel, agree to cooperate with each other and do all things reasonably necessary to obtain preliminary approval of the Settlement; to obtain final approval of the Settlement; and to otherwise ensure that a fully effective final approval of the Settlement occurs. In the event the District Court disapproves or sets aside this Agreement or any material part hereof for any reason, then the Parties will either jointly agree to accept the Agreement as modified by the Court or engage in negotiations in an effort to jointly agree to modify the Agreement for resubmission to the District Court for approval.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates set forth below.

Dated: ___04-21_____, 2022          By: _____
                                                     george hengle (Apr 21, 2022 12:40 EDT)
                                                     George Hengle
                                                     Plaintiff


Dated: _____, 2022          By: _____
                                                     Sherry Blackburn
                                                     Plaintiff


Dated: _____, 2022          By: _____
                                                     Willie Rose
                                                     Plaintiff

the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement. For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

11.17 <u>Cooperation.</u>  The Parties, and their respective counsel, agree to cooperate with each other and do all things reasonably necessary to obtain preliminary approval of the Settlement; to obtain final approval of the Settlement; and to otherwise ensure that a fully effective final approval of the Settlement occurs. In the event the District Court disapproves or sets aside this Agreement or any material part hereof for any reason, then the Parties will either jointly agree to accept the Agreement as modified by the Court or engage in negotiations in an effort to jointly agree to modify the Agreement for resubmission to the District Court for approval.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates set forth below.

Dated: _____, 2022       By: _____
                                               George Hengle
                                               Plaintiff


Dated: __04-21_____, 2022     By: *Sherry Blackburn*_____
                                               Sherry Blackburn (Apr 21, 2022 12:47 EDT)
                                               Sherry Blackburn
                                               Plaintiff


Dated: _____, 2022       By: _____
                                               Willie Rose
                                               Plaintiff

46

the Parties that executed it, provided, however, that none of the Parties shall be bound unless and until all Parties have executed this Agreement. For convenience, the several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

11.17 <u>Cooperation.</u>  The Parties, and their respective counsel, agree to cooperate with each other and do all things reasonably necessary to obtain preliminary approval of the Settlement; to obtain final approval of the Settlement; and to otherwise ensure that a fully effective final approval of the Settlement occurs. In the event the District Court disapproves or sets aside this Agreement or any material part hereof for any reason, then the Parties will either jointly agree to accept the Agreement as modified by the Court or engage in negotiations in an effort to jointly agree to modify the Agreement for resubmission to the District Court for approval.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement on the dates set forth below.

Dated: _____, 2022          By: _____
                                                      George Hengle
                                                      Plaintiff


Dated: _____, 2022          By: _____
                                                      Sherry Blackburn
                                                      Plaintiff


Dated: 04-22 _____, 2022          By: _____
                                                 Willie Rose (Apr 22, 2022 09:25 EDT)
                                                      Willie Rose
                                                      Plaintiff

Dated: 04-21 , 2022

By: _____
Elwood bumbray (Apr 21, 2022 13:52 EDT)
Elwood Bumbray
Plaintiff

Dated: _____ , 2022

By: _____
Tiffani Myers
Plaintiff

Dated: _____ , 2022

By: _____
Steven Pike
Plaintiff

Dated: _____ , 2022

By: _____
Sue Collins
Plaintiff

Dated: _____ , 2022

By: _____
Lawrence Mwethuku
Plaintiff

Dated: _____ , 2022

By: _____
Regina Nolte
Plaintiff

Dated: _____ , 2022

By: _____
Jo Ann Falash
Plaintiff

Dated: _____ , 2022

By: _____
Sherry Treppa
Defendant

Dated: _____ , 2022

By: _____
Tracey Treppa
Defendant

Dated: _____, 2022       By: _____
                                            Elwood Bumbray
                                            Plaintiff


Dated: __04-21_____, 2022          By: _____
                                            Tiffani Myers (Apr 21, 2022 13:32 EDT)
                                            Tiffani Myers
                                            Plaintiff


Dated: _____, 2022       By: _____
                                            Steven Pike
                                            Plaintiff


Dated: _____, 2022       By: _____
                                            Sue Collins
                                            Plaintiff


Dated: _____, 2022       By: _____
                                            Lawrence Mwethuku
                                            Plaintiff


Dated: _____, 2022       By: _____
                                            Regina Nolte
                                            Plaintiff


Dated: _____, 2022       By: _____
                                            Jo Ann Falash
                                            Plaintiff


Dated: _____, 2022       By: _____
                                            Sherry Treppa
                                            Defendant


Dated: _____, 2022       By: _____
                                            Tracey Treppa
                                            Defendant

Dated: _____, 2022          By: _____
                                              Elwood Bumbray
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Tiffani Myers
                                              Plaintiff


Dated: __04-21_____, 2022          By: _____
                                              Steven Pike (Apr 21, 2022 23:36 EDT)
                                              Steven Pike
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Sue Collins
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Lawrence Mwethuku
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Regina Nolte
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Jo Ann Falash
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Sherry Treppa
                                              Defendant


Dated: _____, 2022          By: _____
                                              Tracey Treppa
                                              Defendant

Dated: _____, 2022          By: _____
                                                          Elwood Bumbray
                                                          Plaintiff


Dated: _____, 2022          By: _____
                                                          Tiffani Myers
                                                          Plaintiff


Dated: _____, 2022          By: _____
                                                          Steven Pike
                                                          Plaintiff


Dated: **04-21**_____, 2022          By: *Sue A. ArciaCollins*_____
                                                          Sue Collins
                                                          Plaintiff


Dated: _____, 2022          By: _____
                                                          Lawrence Mwethuku
                                                          Plaintiff


Dated: _____, 2022          By: _____
                                                          Regina Nolte
                                                          Plaintiff


Dated: _____, 2022          By: _____
                                                          Jo Ann Falash
                                                          Plaintiff


Dated: _____, 2022          By: _____
                                                          Sherry Treppa
                                                          Defendant


Dated: _____, 2022          By: _____
                                                          Tracey Treppa
                                                          Defendant

Dated: _____, 2022        By: _____
                                             Elwood Bumbray
                                             Plaintiff


Dated: _____, 2022        By: _____
                                             Tiffani Myers
                                             Plaintiff


Dated: _____, 2022        By: _____
                                             Steven Pike
                                             Plaintiff


Dated: _____, 2022        By: _____
                                             Sue Collins
                                             Plaintiff


Dated: **04-21**_____, 2022       By: _____
                                             Lawrence Philip Mwethuku (Apr 21, 2022 12:19 EDT)
                                             Lawrence Mwethuku
                                             Plaintiff


Dated: _____, 2022        By: _____
                                             Regina Nolte
                                             Plaintiff


Dated: _____, 2022        By: _____
                                             Jo Ann Falash
                                             Plaintiff


Dated: _____, 2022        By: _____
                                             Sherry Treppa
                                             Defendant


Dated: _____, 2022        By: _____
                                             Tracey Treppa
                                             Defendant

Dated: _____, 2022          By: _____
                                                 Elwood Bumbray
                                                 Plaintiff


Dated: _____, 2022          By: _____
                                                 Tiffani Myers
                                                 Plaintiff


Dated: _____, 2022          By: _____
                                                 Steven Pike
                                                 Plaintiff


Dated: _____, 2022          By: _____
                                                 Sue Collins
                                                 Plaintiff


Dated: _____, 2022          By: _____
                                                 Lawrence Mwethuku
                                                 Plaintiff


Dated: __04-21_____, 2022          By: _*Regina Nolte*_____
                                                 Regina Nolte (Apr 21, 2022 12:16 EDT)
                                                 Regina Nolte
                                                 Plaintiff


Dated: _____, 2022          By: _____
                                                 Jo Ann Falash
                                                 Plaintiff


Dated: _____, 2022          By: _____
                                                 Sherry Treppa
                                                 Defendant


Dated: _____, 2022          By: _____
                                                 Tracey Treppa
                                                 Defendant

Dated: _____, 2022          By: _____
                                              Elwood Bumbray
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Tiffani Myers
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Steven Pike
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Sue Collins
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Lawrence Mwethuku
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Regina Nolte
                                              Plaintiff


Dated: __04-21_____, 2022          By: _____
                                              Jo Ann Falash
                                              Plaintiff


Dated: _____, 2022          By: _____
                                              Sherry Treppa
                                              Defendant


Dated: _____, 2022          By: _____
                                              Tracey Treppa
                                              Defendant

Dated: _____, 2022      By: _____
                                           Elwood Bumbray
                                           Plaintiff


Dated: _____, 2022      By: _____
                                           Tiffani Myers
                                           Plaintiff


Dated: _____, 2022      By: _____
                                           Steven Pike
                                           Plaintiff


Dated: _____, 2022      By: _____
                                           Sue Collins
                                           Plaintiff


Dated: _____, 2022      By: _____
                                           Lawrence Mwethuku
                                           Plaintiff


Dated: _____, 2022      By: _____
                                           Regina Nolte
                                           Plaintiff


Dated: _____, 2022      By: _____
                                           Jo Ann Falash
                                           Plaintiff


Dated: *April 22*, 2022           By: _____
                                           Sherry Treppa
                                           Defendant


Dated: *April 23*, 2022           By: _____
                                           Tracey Treppa
                                           Defendant

Dated: _April 22, 2022_, 2022          By: _Kathleen Treppa_
                                            Kathleen Treppa
                                            Defendant

Dated: _4.22._, 2022                    By: _____
                                            Aimee Jackson-Penn
                                            Defendant

Dated: _April 22_, 2022                 By: _____
                                            Jennifer Burnett
                                            Defendant

Dated: _April 22, 9ᵃᵐ_, 2022            By: _Carol Munoz_
                                            Carol Munoz
                                            Defendant

Dated: _April 22_, 2022                 By: _Veronica Krohn_
                                            Veronica Krohn
                                            Defendant

Dated: _____, 2022          By: _____
                                            Joshua Landy
                                            Defendant

Dated: _____, 2022          By: _____
                                            Scott Asner
                                            Defendant

Dated: _____, 2022          By: _____
                                            Michael Gortenburg
                                            Defendant

Dated: _____, 2022          By: _____
                                            David Vittor
                                            Defendant

48

Dated: _____, 2022

By: _____
        Kathleen Treppa
        Defendant

Dated: _____, 2022

By: _____
        Aimee Jackson-Penn
        Defendant

Dated: _____, 2022

By: _____
        Jennifer Burnett
        Defendant

Dated: _____, 2022

By: _____
        Carol Munoz
        Defendant

Dated: _____, 2022

By: _____
        Veronica Krohn
        Defendant

Dated: 04/22/22 _____, 2022

By: _____
        Joshua Landy
        Defendant

Dated: _____, 2022

By: _____
        Scott Asner
        Defendant

Dated: _____, 2022

By: _____
        Michael Gortenburg
        Defendant

Dated: _____, 2022

By: _____
        David Vittor
        Defendant

48

Dated: _____, 2022          By: _____
                                              Kathleen Treppa
                                              Defendant

Dated: _____, 2022          By: _____
                                              Aimee Jackson-Penn
                                              Defendant

Dated: _____, 2022          By: _____
                                              Jennifer Burnett
                                              Defendant

Dated: _____, 2022          By: _____
                                              Carol Munoz
                                              Defendant

Dated: _____, 2022          By: _____
                                              Veronica Krohn
                                              Defendant

Dated: _____, 2022          By: _____
                                              Joshua Landy
                                              Defendant

Dated: ___April 22____, 2022          By: _____*Scott Asner*_____
                                              Scott Asner
                                              Defendant

Dated: ___April 22____, 2022          By: _____*Michael Gortenburg*_____
                                              Michael Gortenburg
                                              Defendant

Dated: ___04/22____, 2022             By: _____*David I. Vittor*_____
                                              David Vittor
                                              Defendant

**APPROVED AS TO FORM:**

Dated: __April 23, 2022

GUPTA WESSLER PLLC

By: _____
                    Matthew W. Wessler

*Attorneys for Plaintiffs*


Dated: _____, 2022

KELLY GUZZO PLC

By: _____
                    Andrew J. Guzzo

*Attorneys for Plaintiffs*


Dated: _____, 2022

CONSUMER LITIGATION ASSOCIATES, P.C.

By: _____
                    Leonard A. Bennett

*Attorneys for Plaintiffs*


Dated: _____, 2022

WILKINSON STELOFF

By: _____
                    Rakesh Kilaru

*Attorneys for Tribal Officials*


Dated: _____, 2022

JENNER BLOCK

By: _____
                    Thomas J. Perrelli

*Attorneys for Joshua Landy*

**APPROVED AS TO FORM:**

Dated: _____, 2022          GUPTA WESSLER PLLC

                                       By: _____
                                              Matthew W. Wessler

                                       *Attorneys for Plaintiffs*


Dated: *April 24*_____, 2022         KELLY GUZZO PLC

                                       By: _____
                                              Andrew J. Guzzo

                                       *Attorneys for Plaintiffs*


Dated: _____April 24_____, 2022       CONSUMER LITIGATION ASSOCIATES,
                                       P.C.

                                       By: _____
                                              Leonard A. Bennett

                                       *Attorneys for Plaintiffs*


Dated: _____, 2022           WILKINSON STEKLOFF

                                       By: _____
                                              Rakesh Kilaru

                                       *Attorneys for Tribal Officials*


Dated: *April 23*_____, 2022         JENNER BLOCK

                                       By: _____
                                              Thomas J. Perrelli

                                       *Attorneys for Joshua Landy*

49

**APPROVED AS TO FORM:**

Dated: _____, 2022      GUPTA WESSLER PLLC

By: _____
           Matthew W. Wessler

*Attorneys for Plaintiffs*

Dated: _____, 2022      KELLY GUZZO PLC

By: _____
           Andrew J. Guzzo

*Attorneys for Plaintiffs*

Dated: _____, 2022      CONSUMER LITIGATION ASSOCIATES, P.C.

By: _____
           Leonard A. Bennett

*Attorneys for Plaintiffs*

Dated: _April 22_____, 2022      WILKINSON STEKLOFF

By: _____
           Rakesh Kilaru

*Attorneys for Tribal Officials*

Dated: _____, 2022      JENNER BLOCK

By: _____
           Thomas J. Perrelli

*Attorneys for Joshua Landy*

Dated: _____April 22_____, 2022   STEIN MITCHELL

By: _____*Robert Gilmore*_____
Robert Gilmore

*Attorneys for Scott Asner, Michael*
*Gortenburg, and David Vittor*

50

Exhibit 1

Return Address Box 123
Return City, ST 12345-6789

E1234 0000001 P01 T00001 ************5-DIGIT 12345



John Q. Sample
123 Any Street
Any Town, PA 12345-6789

# If You Obtained a Loan from
# Golden Valley, Silver Cloud, Majestic Lake or Mountain Summit
# You Could Get Loan Forgiveness and/or a Cash Payment from a Settlement.

*A federal court ordered this notice. This is not a solicitation from a lawyer.*

- Read this Notice. It states your rights and provides you with information regarding the settlement ("Settlement") of a proposed nationwide Class Action against a number of persons alleged to be involved with the making of online loans in the name of Golden Valley, Silver Cloud, Majestic Lake and Mountain Summit. The settling parties, listed below, are Sherry Treppa; Tracey Treppa; Kathleen Treppa; Iris Picton; Sam Icay; Aimee Jackson-Penn; Amber Jackson; Jennifer Burnett; Carol Munoz; Veronica Krohn (together the "Tribal Officials") and Joshua Landy, Scott Asner, Michael Gortenburg, David Vittor (the Tribal Officials, Landy, Asner, Gortenburg, and Vittor, together, "Defendants").

- This Notice is a summary of information about the Settlement and explains your legal rights and options because you are a member of the class of borrowers (the "Settlement Class") who will be affected if the Settlement is approved by the Court. The complete terms of the proposed Settlement are available at the Settlement website, **www.xxxxxxxxxxxx.com**. You also may contact Class Counsel for further details and advice.

- A lawsuit was brought on behalf of individuals who obtained loans from Golden Valley, Silver Cloud, Majestic Lake and Mountain Summit. Defendants denied all allegations against them.

- As part of the proposed Settlement, all unpaid amounts will be cancelled if you obtained a loan from Golden Valley, Silver Cloud or Majestic Lake. All unpaid amounts will also be cancelled if you obtained a loan from Mountain Summit provided that your loan was taken out prior to February 1, 2021.

- The lawsuit claimed that: (1) the loans were made at annual interest rates greater than what was permitted by state law; and/or (2) the lenders did not have the required license to lend in several jurisdictions, making the loans illegal, unenforceable, or unfair under various state and federal laws.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will remain a member of the Settlement Class and may be eligible for benefits, including debt cancellation and/or monetary payment. You will give up rights to ever sue the Defendants about the legal claims that are in, or related to, the lawsuit. |
| **EXCLUDE YOURSELF** | You can opt out of the Settlement and you will not be eligible for any benefits, including any cash payments. This is the only option that allows you to keep any rights you have to bring, or to become part of, another lawsuit involving the claims being settled. There is no guarantee that another lawsuit would be successful or would lead to a larger or better recovery than this Settlement. |
| **OBJECT TO THE SETTLEMENT** | If you do not exclude yourself, you may write to the Court about why you don't like the Settlement or why the Court should not approve it. |

## 1. WHY IS THERE A NOTICE?

This Notice is about a proposed nationwide Settlement that will be considered by the United States District Court for the Eastern District of Virginia in Richmond, Virginia (the "Court"). The Settlement must be approved by this Court.

The claims are being settled in the United States District Court for the Eastern District of Virginia in *Hengle, et al. v. Scott Asner,*

*et al.,* Case No. 3:19-cv-250.

## 2.   WHAT IS THIS LAWSUIT ABOUT?

The claims involved in the Settlement arise out of loans made in the name of Golden Valley, Silver Cloud, Majestic Lake, and Mountain Summit. The Plaintiffs in these cases claim that Defendants violated federal and state laws by making and collecting loans with annual interest rates in excess of the amount allowed by various state laws. Plaintiffs sought to prevent the Tribal Officials from collecting on these loans and sought recovery of monetary damages from Landy, Asner, Gortenburg and Vittor, who were alleged to have created, implemented, and/or funded the lending businesses.

Defendants vigorously deny any wrongdoing and all claims against them. They assert that the loans are legal because: (1) the rates and terms were authorized under the respective laws of the Native American Tribes that own and operate Golden Valley, Silver Cloud, Majestic Lake, and Mountain Summit; and (2) the borrowers each explicitly agreed that tribal laws governed the loan(s). Defendants also defend against the consumers' claims on a number of additional grounds, including because the loans' rates and terms were fully disclosed, because the loans benefitted the consumers, because Tribal Officials are immune from suit, because consumers agreed to arbitrate any disputes, and because (for the individual Defendants) their alleged level of involvement in the lending enterprise did not rise to the level to make them liable to Plaintiffs.

Important case documents may be accessed at the Settlement website, www.xxxxxxxxxxxx.com.

## 3.   WHY IS THIS A CLASS ACTION?

In a class action or proceeding, one or more people, called class representatives, bring an action on behalf of people who have similar claims. All of the people who have claims similar to the class representatives are a class or class members, except for those who exclude themselves from the class.  Here, Plaintiffs have filed lawsuits on behalf of the Class against Defendants, who were alleged to have been involved in the lending enterprise.

## 4.   HOW DO I KNOW IF I AM INCLUDED IN THE SETTLEMENT?

You are a member of the Settlement Class and would be affected by the Settlement if you obtained a loan from Golden Valley, Silver Cloud, or Majestic Lake; or if you obtained a loan from Mountain Summit prior to February 1, 2021.

If you received this Notice, we believe you are a member of the Settlement Class and you will be a Settlement Class Member unless you exclude yourself.

## 5.   WHAT DOES THE SETTLEMENT PROVIDE?

Defendants have agreed to provide the following benefits and others more fully described at the Settlement website, www.xxxxxxxxxxxx.com:

**Monetary Consideration:** A $39,000,000.00 fund will be created from contributions by the non-Tribal Defendants to provide additional cash payments to Class Members. The Tribal Officials will separately pay the costs of notice and administration. If the Court approves the Settlement, and if you are entitled to any payment, a check for your portion will be automatically mailed to you.

 The amount of your check will depend on what you paid in principal and/or what you paid in interest above your state's legal limits, as well as the amount of money available in the settlement fund. The list of the rates by state used in this Settlement is available on the Settlement website, **www.xxxxxxxxxxx.com**. You will only get a proportionate share of the recovery (because the total in settlement funds available likely will not be enough to pay everyone the full amount paid on their loan). You may also go to the website to determine if you would receive a payment, and you can contact the Administrator, using the contact information below, to get an estimate of the amount you likely would receive if the Settlement is approved.

The Settlement Administrator will mail the check to the same address as this Notice, so please update your address if you move.

You will **not** receive a cash payment, but will receive other benefits, if you:

- Did not make any payments on your loan with Golden Valley, Silver Cloud, Majestic Lake, or Mountain Summit
- Lived in Arizona, Arkansas, Colorado, Connecticut, Idaho, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Montana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, Ohio, South Dakota, Vermont, Virginia, and Wisconsin and did not make payments above the principal on your loan; or
- Lived in Alabama, Alaska, California, Delaware, Florida, Georgia, Hawaii, Iowa, Louisiana, Maine, Maryland, Michigan, Mississippi, Missouri, Nebraska, North Dakota, Oklahoma, Oregon, Rhode Island, South Carolina, Tennessee, Texas, Washington, West Virginia, Washington D.C., and Wyoming and did not pay interest above your state's legal limits;
- Lived in Utah or Nevada (which had no interest restrictions).

**Debt Cancellation:** Any outstanding loan will be cancelled, so you will not owe any more money on this debt. You will not receive a 1099 for the cancellation of this debt. The Tribal Officials also have agreed not to sell, transfer, or assign any of the loans covered by the Settlement to any third party.

**Request to Delete Credit Reporting:** The Tribal Officials will request that any Golden Valley, Silver Cloud, Majestic Lake or Mountain Summit loan(s) that are part of this Settlement and are reported negatively in your consumer reports be deleted from the various consumer reporting agencies.

**Other Benefits**: The Tribal Officials will agree not to sell the personal identifying information to any third parties for any purpose in the future, except to answer questions about this Settlement.

## 6.  WHAT DO I HAVE TO DO TO RECEIVE THE BENEFITS OF THE SETTLEMENT?

Nothing. If the Court approves the Settlement, the benefits described above will happen automatically. The Settlement Administrator will send an email after Final Approval to update you on what happened at the hearing.  You can also check the website for an update or contact the Settlement Administrator or Class Counsel if you have additional questions.

## 7.  WHAT AM I GIVING UP TO GET A BENEFIT AND STAY IN THE SETTLEMENT CLASS?

Unless you exclude yourself, you are a member of the Settlement Class, and that means that you cannot sue, continue to sue, or be part of any other lawsuit against Defendants concerning the claims relating to your Golden Valley, Silver Cloud and Majestic Lake and Mountain Summit loans.  This also means that you will not be able to pursue or recover any additional money from Defendants beyond the benefits of this Settlement.  The Released Parties include: the Tribal Officials in their official and individual capacities, as well as their predecessors and successors, and any of their trusts, trustees, heirs, assigns, lenders, insurers, reinsurers, and attorneys; Joshua Landy, Joshua S. Landy Revocable Trust, Joshua Landy Family Irrevocable Trust, Oceanside Breeze Holdings, LLC, Sunny Ridge Financial, LLC, Scott Asner, Michael Gortenburg, AG613, LLC, SIA Oil, LLC, Asner Family Holdings, LLC, Yukel Holdings, LLC, David Vittor, and the David J. Vittor Trust, and each of their parents, subsidiaries, controlling entities, related entities, administrators, predecessors-in-interest, successors, and reorganized successors, and each of the former's current and former members (including, but not limited to, member funds), directors, officers, trustees, shareholders, employees, partners, contractors, joint-venturers, representatives, assigns, agents, lenders, insurers, reinsurers, and attorneys.

Staying in the Class also means that any Court orders pertaining to this Settlement will apply to you and legally bind you. The complete Release and list of Released Parties can be found in the Settlement Agreement, which is available on the Settlement website at www.xxxxxxxxxxxx.com.

## 8.  HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?

To be excluded from this Settlement, you must send an "Exclusion Request" by mail.  You may download a form to use from the Settlement website or you may send your own letter which must include:
- Your name, address, and telephone number,
- Last four digits of your social security number, or your account number with Golden Valley, Silver Cloud, Majestic Lake or Mountain Summit,
- A statement that you want to be excluded: "I request to be excluded from the class settlement in this case," and

- Your Signature.

Your Exclusion Request must be **postmarked** no later than Month ##, 2022, to:

Hengle Settlement
c/o Settlement Administrator
P.O. Box ####
City, State #####-####

## 9.   HOW DO I TELL THE COURT THAT I OBJECT TO AND DO NOT LIKE THE SETTLEMENT?

Objecting to the Settlement is different than Excluding yourself from the Settlement.

If you are a Settlement Class Member and you do not exclude yourself from the Settlement, you can object to the Settlement if you think the Settlement is not fair, reasonable, or adequate, and that the Court should not approve the Settlement.  You also have the right to appear personally and be heard by the Court.  The Court and Class Counsel will consider your views carefully.

To object, you must send a letter stating your views to each of the parties listed below:

| **COURT** | **SETTLEMENT ADMINISTRATOR** |
|---|---|
| Clerk of the Court | Hengle Settlement |
| United States District Court | c/o Settlement Administrator |
| Eastern District of Virginia | P.O. Box #### |
| 701 E. Broad St. | City, State  #####-#### |
| Richmond, VA 23219 | |

You should include the docket number on the front of the envelope and letter you file to the Court: "EDVA USDC Case No. 3:19-cv-250".

All objections must include:
- Your name, address, telephone number and e-mail address,
- Your account number (if you know it) with Golden Valley, Silver Cloud, Majestic Lake or Mountain Summit,
- A sentence confirming that you are a Settlement Class Member,
- Factual basis and legal grounds for the objection to the Settlement, and
- A list of any prior cases in which you or your counsel have objected to a class settlement. Counsel representing an objecting Settlement Class Member must enter an appearance in these cases.  If you want to appear personally at the hearings, you must state that in your Objection.

**Objections must be filed with the above Court no later than Month ##, 2022 and served on the above parties so that they are postmarked no later than Month ##, 2022.**

## 10.   WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Court will hold a hearing to decide whether to approve the Settlement.

The Eastern District of Virginia will hold a final hearing on the fairness of the Settlement on Month ##, 2022 at ##:00 a.m. in the courtroom of Judge David J. Novak of the United States District Court for the Eastern District of Virginia, 701 E. Broad St., Richmond, VA 23219.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.

If there are objections or comments, the Court will consider them at that time.  The hearing may be moved to a different date or time without additional notice.  Please check www.xxxxxxxxxxx.com or call 1-8##-###-#### to be kept up-to-date on the date, time, and location of the hearings.

## 11.   DO I HAVE TO COME TO THE HEARING?

No.  But you are welcome to come at your own expense.  As long as you mailed your written objection on time, the Court will

consider it.  You may also retain a lawyer to appear on your behalf at your own expense.

## 12.  DO I HAVE A LAWYER IN THE CASE?

Yes.  The Court has appointed the following law firms as Class Counsel to represent you and all other members of the Settlement Class:

| | | |
|---|---|---|
| Kristi C. Kelly, Andrew J. Guzzo, Casey Nash, and J. Patrick McNichol Kelly Guzzo, PLC 3925 Chain Bridge Road, Suite 202 Fairfax, VA 22030 | Leonard A. Bennett, Kevin Dillon, and Drew Sarrett Consumer Litigation Associates, P.C. 763 J. Clyde Morris Blvd., Suite 1A Newport News, VA 23601 | Matthew Wessler Gupta Wessler PLLC 1900 L St NW Washington, D.C. 20036 |

These lawyers will not separately charge you for their work on the case.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 13.  HOW WILL THE LAWYERS BE PAID?

Class Counsel are permitted to ask the United States District Court for the Eastern District of Virginia for an award of attorneys' fees not to exceed one third of the amount paid by Defendants. The amounts awarded by the Court will reduce the distributions to Class Members.

Class Counsel will ask the Court to approve a $10,000 payment to each of the ten individual Plaintiffs in the Eastern District of Virginia case. Those named Plaintiffs made substantial contributions in the prosecution of these lawsuits for the benefit of the Class.  The Court will ultimately decide how much the individual Plaintiffs will be paid.

## 14.  HOW DO I GET MORE INFORMATION?

This Notice summarizes the proposed Settlement. You can get a copy of the Settlement Agreement and other relevant case-related documents by visiting www.xxxxxxxxxxx.com, by calling the Settlement Administrator at 1-8##-###-####, Class Counsel at ###-###-####, or by contacting Class Counsel at the addresses above or by email to classcounsel@xxxxxxxx.com.

**PLEASE DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR THE LITIGATION TO THE CLERK OF THE COURT, THE JUDGES, THE DEFENDANTS OR THE DEFENDANTS' COUNSEL. THEY ARE NOT PERMITTED TO ANSWER YOUR QUESTIONS.**

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GEORGE HENGLE, *et al., on behalf of*
*themselves and all others similarly*
*situated,*

                             Plaintiffs,

           v.                         Case No: 3:19-cv-250-DJN

SCOTT ASNER, *et al,*

                             Defendants.

**[PROPOSED] ORDER**
**GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs George Hengle, Sherry Blackburn, Willie Rose, Elwood Bumbray, Tiffani Myers, Steven Pike, Sue Collins, Lawrence Mwethuku, Regina Nolte, and Jo Ann Falash ("Plaintiffs"), on behalf of themselves and all others similarly situated, have moved the Court for preliminary approval of a proposed class action settlement with Defendants Sherry Treppa, Tracey Treppa, Kathleen Treppa, Aimee Jackson-Penn, Jennifer Burnett, Carol Munoz, and Veronica Krohn (collectively, the "Tribal Officials"), Joshua Landy, Scott Asner, Michael Gortenburg, and David Vittor (the Tribal Officials, Landy, Asner, Gortenburg, and Vittor, together, "Defendants"; and Defendants and Plaintiffs, together, the "Parties"). The terms and conditions of the settlement are set forth in the Stipulation and Agreement of Settlement filed with the Court on April 25, 2022 ("Settlement Agreement") as an exhibit to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion").[1]

---

[1] All capitalized terms used in this Order have the meanings set forth in the Settlement Agreement.

Upon review and consideration of Plaintiffs' Preliminary Approval Motion, the Settlement Agreement, and the exhibits attached to the foregoing, it is **IT IS HEREBY ORDERED** as follows:

1.     This Preliminary Approval Order incorporates the Settlement Agreement, and the capitalized terms used herein, unless stated otherwise, shall have the meanings and/or definitions given to them in the Settlement Agreement, as if fully set forth in this Order.

2.     The Settlement, on the terms and conditions stated in the Settlement Agreement, is preliminarily approved by this Court as being fair, reasonable and adequate, free of collusion or indicia of unfairness, and within the range of possible final judicial approval. In making this determination, the Court has considered the current posture of this litigation, the risks and benefits to the Parties involved in both settlement of these claims and the continuation of the litigation, and the fact that Defendants deny liability and have indicated their intent to defend the litigation vigorously. The Court further finds that the settlement between Plaintiffs  and Defendants was arrived at through arm's-length negotiations and exchange of information by experienced counsel.

## CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL

3.     For purposes of the Settlement, and conditioned upon the Settlement receiving final approval following the Final Fairness Hearing, this Court hereby conditionally certifies a Class for settlement purposes only (the "Settlement Class"), defined as follows and subject to the stated exclusions below:

> All consumers residing within the United States who executed loan agreements with Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Majestic Lake Financial, Inc., or prior to February 1, 2021, with Mountain Summit Financial, Inc.

4.     The Court preliminarily finds that, for settlement purposes and conditioned upon the entry of this Order, the Final Approval Order, and the occurrence of the Effective Date, that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied. The Court finds, in the specific context of this Settlement, that the following requirements are met: (a) the number of Settlement Class Members is so numerous that joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class Members; (c) Plaintiffs' claims are typical of the claims of the Settlement Class Members; (d) Plaintiffs have fairly and adequately represented the interests of the Settlement Class and will continue to do so, and Plaintiffs have retained experienced counsel to represent them; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; and (f) a class action provides a fair and efficient method for settling the controversy under the criteria set forth in Rule 23 and is superior to alternative means of resolving the claims and disputes at issue in this Action. The Court also concludes that, because this Action is being settled rather than litigated, the Court need not consider manageability issues that might be presented by the trial of a class action involving the issues in this case.

5.     The Court finds that the Settlement falls within the range of reasonableness because it provides for meaningful remediation relative to the merits of Plaintiffs' claims and Defendants' defenses in that Settlement Class Members will obtain substantial injunctive relief. The Settlement also has key indicia of fairness in that significant discovery and litigation had been undertaken by the Parties and settlement negotiations occurred at arm's length.

6.     For purposes of Settlement only, the Court finds and determines that Plaintiffs will fairly and adequately represent the interests of the Settlement Class in enforcing the rights of the Settlement Class in this Action, and thus hereby appoints George Hengle, Sherry Blackburn, Willie

Rose, Elwood Bumbray, Tiffani Myers, Steven Pike, Sue Collins Lawrence Mwethuku, Regina Nolte, and Jo Ann Falash as representatives of the conditionally certified Settlement Class ("Class Representatives").

7. For purposes of the Settlement only, the Court appoints as Class Counsel the law firms of Kelly Guzzo PLC, Consumer Litigation Associates, P.C., and Gupta Wessler, PLLC. For purposes of these settlement approval proceedings, the Court finds that these law firms are competent and capable of exercising their responsibilities as Class Counsel and have fairly and adequately represented the interests of the Settlement Class for settlement purposes.

## CLASS NOTICE AND SETTLEMENT ADMINISTRATION

8. Since the Settlement Agreement is within the range of reasonableness and possible final approval, notice shall be provided to the Settlement Class under the Settlement Agreement. The Court approves, as to form and content, the Class Notice and Exclusion Form submitted with Plaintiffs' Preliminary Approval Motion, attached as Exhibits 1 and 4 to the Settlement Agreement.

9. The Court appoints _____ as the Settlement Administrator. The Settlement Administrator shall abide by the terms and conditions of the Settlement Agreement that pertain to the Settlement Administrator. As further set forth in the Settlement Agreement, the Settlement Administrator shall be responsible for, without limitation: (a) disseminating Notice to the Settlement Class; (b) handling returned e-mail notice and mail delivered to members of the Settlement Class; (c) fielding inquiries about the Settlement Agreement;  (d) receiving and maintaining Settlement Class member correspondence regarding requests for exclusion; (e) establishing a Settlement website with relevant case documents to which members of the Settlement Class may refer for information about the Settlement; (f) establishing a toll-free

3

telephone line to receive calls from Settlement Class Members; and (g) carrying out such other responsibilities as are provided for in the Settlement Agreement or agreed to by the Parties.

10.     The Court directs the Settlement Administrator, in accordance with the Settlement Agreement, to cause a copy of the Class Notice to be sent in substantially the same form attached to Plaintiffs' Preliminary Approval Motion to the Settlement Class by a combination of e-mail notice to verified e-mail addresses and/or by U.S. mail, postage prepaid to each Settlement Class Member identified on the Class List. The Class Administrator shall use best practices to identify current Class Members and will act in accordance with the process stated within the Settlement Agreement.

11.     The Court further directs the Settlement Administrator to establish the Settlement Website and secure a toll-free telephone number as set forth in the Settlement Agreement, which shall be operational within 30 days after the Court enters this Preliminary Approval Order.

12.     No later than thirty (30) days before the Final Fairness Hearing, the Settlement Administrator will provide Class Counsel and counsel for Defendants with an affidavit that the mailing of the Settlement Class Notice was completed in a timely manner.

13.     The Court finds that the Class Notice accompanying Plaintiffs' Motion for Preliminary Approval, specifically, and more generally, the notice program described above and set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and satisfies due process and Federal Rule of Civil Procedure 23. The Court finds that the language of the proposed Class Notice is plain and easy to understand and provides neutral and objective information about the nature of the Settlement. Furthermore, the Court finds that the notice program complies with Federal Rule of Civil Procedure 23(e) as it is a reasonable manner of providing notice to those Settlement Class Members who would be bound by the settlement of the pendency of this Action and their right to participate in, object to, or exclude themselves from

4

the Settlement. The Court also finds that the Notice Program complies with Rule 23(c) as it provides for individual notice to all Settlement Class Members and is thus the best notice practicable under the circumstances. In addition, Settlement Class Members will have access to the Settlement Website and a toll-free telephone line for purposes of obtaining additional information about the Settlement.

14.     Class Notice and Settlement administration costs as set forth in the Settlement Agreement shall be paid by the Tribal Officials.

## REQUESTS FOR EXCLUSION

15.     Settlement Class Members may elect to exclude themselves or "opt-out" from the Settlement Agreement by following the procedures set forth in the Settlement Agreement for doing so. In the event a Settlement Class Member wishes to be excluded from the Settlement and not to be bound by the Settlement Agreement, that person must, prior to the Opt-Out Deadline, advise the Class Administrator in writing of that intent. In the written request for exclusion, the Settlement Class Member must state his or her full name, address, and telephone number. Further, the Settlement Class Member must include a statement in the written request that he or she wishes to be excluded from the Settlement Agreement in the  Action. The request must also be signed by the Settlement Class Member.

16.     Any request for exclusion or opt out must be postmarked on or before the Opt-Out Deadline of _____. The date of the postmark on the return mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. The Court retains jurisdiction to resolve any disputed exclusion requests.

17.     A Settlement Class Member who opts out of the Settlement may opt back in so long as the opt-in request is received prior to the Opt-Out Deadline.

18.     No one shall be permitted to exercise any exclusion rights on behalf of any other person, whether as an agent or representative of another or otherwise, except upon proof of a legal power of attorney, conservatorship, trusteeship, or other legal authorization, and no one may exclude other persons within the Settlement Class as a group, class, or in the aggregate.

19.     Any member of the Settlement Class who submits a valid and timely request for exclusion will not be a Settlement Class Member, shall not be bound by the terms of the Settlement Agreement, and shall relinquish their rights to benefits with respect to the Settlement Agreement, should it be finally approved, and may not file an objection to the Settlement Agreement or to any application for reimbursement of attorneys' fees and costs or Service Awards or otherwise intervene in the  Action.

20.     Any Settlement Class Member who does not submit a valid and timely request for exclusion shall be bound by all the terms and provisions of the Settlement Agreement, including any Release set forth therein, the Final Approval Order, and the Final Judgment, whether or not such Settlement Class Member objected to the settlement.

21.     The Settlement Administrator shall provide copies of any requests for exclusion to the Parties as provided in the Settlement Agreement.

## OBJECTIONS

22.     Any Settlement Class Member who does not opt out of the Settlement and intends to object to any aspect of the proposed Settlement, request for reimbursement of attorneys' fees and costs, or Service Awards, must file a written objection signed by the Settlement Class Member with the Court by the Objection Deadline of _____. For an objection to be considered by the Court, the objection must also set forth and include the following:

a.   the Settlement Class Member's name, address, email address, and telephone number;

b.  an explanation of the basis upon which the Objector claims to be a Settlement Class Member;

c.  the reasons for his or her objection, accompanied by any legal or factual support for the objection;

d.  the name of counsel for the Objector (if any);

e.  information about other objections the Objector or his or her counsel have made in other class action cases; and

f.  whether he or she intends to appear at the Final Fairness Hearing on his or her own behalf or through counsel.

23.    A Settlement Class Member may not both opt out of the Settlement and object. If a Settlement Class Member submits both a request for exclusion and objection, the request for exclusion will control.

24.    No member of the Settlement Class or counsel retained by such a member of the Settlement Class shall be entitled to be heard at the Final Fairness Hearing unless the Objector or his or her attorneys who intend to make an appearance at the Final Fairness Hearing state their intention to appear in the objection filed with the Court in accordance with the preceding paragraphs. Counsel for any such member of the Settlement Class must enter his or her appearance with the Court by the Objection Deadline.

25.    Any Settlement Class Member who fails to file and serve a valid and timely written objection in the manner specified above shall be deemed to have waived all objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement, including but not limited to the benefits to Settlement Class Members, the Service Awards, or the Final Judgment.

**FINAL FAIRNESS HEARING**

26.    A Final Fairness Hearing shall be held on [DATE] at [TIME] before this Court in Courtroom 6300 of the Spottswood W. Robinson III and Robert R. Merhige, Jr., Federal

7

Courthouse, 701 East Broad Street, Richmond, VA 23219. At the Final Fairness Hearing, the Court will consider and determine: (1) whether the Settlement Agreement should be finally approved as fair, reasonable, and adequate; (2) whether any objections to the Settlement Agreement should be overruled; (3) whether Class Counsel's requested for Service Awards to the Class Representatives should be approved; and (4) whether a judgment finally approving the Settlement Agreement should be entered. The date of the Final Fairness Hearing may be continued by the Court from time to time without the necessity of further notice to the Settlement Class.

27.     Any Settlement Class Member may enter an appearance in this Action at his or her own expense, individually or through counsel. However, if a Settlement Class Member wishes to object to the Settlement at the Final Fairness Hearing (either personally or through counsel), the Settlement Class Member must submit a written objection as set forth in the Settlement Agreement and this Order. All Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

28.     The motion for final approval of the Settlement Agreement and any papers the Parties wish to submit in support of final approval of the Settlement Agreement, shall be filed with the Court no later than thirty (30) calendar days prior to the Final Fairness Hearing. Any response to any Objection to the Settlement Agreement shall be filed with the Court no later than fourteen (14) calendar days prior to the Final Fairness Hearing.

## STAY OF LITIGATION

29.     Pending the Final Fairness Hearing, all proceedings in this Action are stayed and suspended until further order of this Court, except such actions as may be necessary to carry out or enforce the terms and conditions of the Settlement Agreement and this Preliminary Approval Order.

**OTHER PROVISIONS**

30.     For the benefit of the Settlement Class and to protect this Court's jurisdiction, this Court retains continuing jurisdiction over the Settlement proceedings relating to the interpretation, administration, implementation, effectuation, and enforcement of this Settlement.

31.     Any deadlines set in this Preliminary Approval Order may be extended by order of the Court, for good cause shown, without further notice to the Settlement Class, except that notice of any such extensions shall be posted to the Settlement Website. Members of the Settlement Class should check the Settlement Website regularly for updates, changes, and/or further details regarding extensions of these deadlines.

32.     The Parties are directed to carry out their obligations under the Settlement Agreement, including the injunctive relief provisions regarding the collection of the Outstanding Debts, and are hereby authorized to use all reasonable procedures in connection with approval and administration of the settlement that are not materially inconsistent with this Order or the Settlement Agreement, including making, without further approval of the Court, minor changes to the Settlement Agreement or to the form or content of the Class Notice that the Parties jointly agree are reasonable or necessary, and which do not limit the rights of Settlement Class Members under the Settlement Agreement.

33.     In the event that the proposed Settlement is not finally approved by the Court, or in the event that the Settlement Agreement becomes null and void or terminates pursuant to its terms, this Preliminary Approval Order and all orders entered in connection with the Settlement Agreement shall become null and void, shall be of no further force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Settlement Agreement had never been executed.

**IT IS SO ORDERED.**

Dated: _____

_____
Hon. David J. Novak
United States District Court Judge

Exhibit 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

GEORGE HENGLE, *et al., on behalf of*
*themselves and all others similarly*
*situated,*

                        Plaintiffs,

            v.                                    Case No: 3:19-cv-250-DJN

SCOTT ASNER, *et al*,

                        Defendants.

**[PROPOSED] ORDER GRANTING**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT,**
**CERTIFYING SETTLEMENT CLASS, AND ENTERING FINAL JUDGMENT**

Plaintiffs George Hengle, Sherry Blackburn, Willie Rose, Elwood Bumbray, Tiffani

Myers, Steven Pike, Sue Collins, Lawrence Mwethuku, Regina Nolte, and Jo Ann Falash

("Plaintiffs"), individually and on behalf of the preliminarily certified Settlement Class, have

submitted to the Court a Motion for Final Approval of the Settlement Agreement and Final

Certification of the Settlement Class ("Final Approval Motion").

This Court has reviewed the papers filed in support of the Final Approval Motion,

including the Settlement Agreement filed with Plaintiffs' Preliminary Approval Motion, the

memoranda and arguments submitted on behalf of the Settlement Class, and all supporting

exhibits and declarations thereto, as well as the Court's Preliminary Approval Order. The Court

held a Final Fairness Hearing on ⬛⬛⬛⬛⬛⬛⬛⬛⬛, at which time the Parties and other

interested persons were given an opportunity to be heard in support of and in opposition to the

proposed settlement. Based on the papers filed with the Court and the presentations made at the

Final Fairness Hearing, the Court finds that the Settlement Agreement is fair, adequate, and

1

reasonable. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

1.      This Final Approval Order incorporates herein and makes a part hereof the Settlement Agreement and the Preliminary Approval Order. Unless otherwise provided herein, the capitalized terms used herein shall have the same meanings and/or definitions given to them in the Preliminary Approval Order and Settlement Agreement, as submitted to the Court with Plaintiffs' Preliminary Approval Motion.

2.      This Court has jurisdiction over matters relating to the Settlement, including, without limitation, the administration, interpretation, effectuation and enforcement of the Settlement, the Settlement Agreement, or this Final Order and Judgment.

### CERTIFICATION OF THE SETTLEMENT CLASS AND
### APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

3.      In the Preliminary Approval Order, this Court previously certified, for settlement purposes only, a Settlement Class defined as follows:

> All consumers residing in the United States who executed loan agreements with :
> (1) Golden Valley Lending, Inc., Silver Cloud Financial, Inc.,   Majestic Lake Financial, Inc., or  prior to February 1, 2021, Mountain Summit Financial, Inc.

4.      Certification of the Settlement Class is hereby reaffirmed as a final Settlement Class pursuant to Fed. R. Civ. P. 23. For the reasons set forth in the Preliminary Approval Order, this Court finds, on the record before it, that the Action, for purposes of this Settlement, may be maintained as a class action on behalf of the Settlement Class.

5.      In the Preliminary Approval Order, this Court previously appointed the above-identified Plaintiffs George Hengle, Sherry Blackburn, Willie Rose, Elwood Bumbray, Tiffani Myers, Steven Pike, Sue Collins, Lawrence Mwethuku, Regina Nolte, and Jo Ann Falash as

2

Class Representatives and hereby reaffirms that appointment, finding, on the record before it, that the Class Representatives have and continue to adequately represent Settlement Class Members.

6.      In the Preliminary Approval Order, this Court previously appointed the law firms of Kelly Guzzo PLC, Consumer Litigation Associates, P.C., and Gupta Wessler, PLLC as Class Counsel for settlement purposes only and hereby reaffirms that appointment, finding, on the record before it, that Class Counsel have and continue to adequately and fairly represent Settlement Class Members.

**CLASS NOTICE**

7.      The record shows, and the Court finds, that Class Notice has been given to the Settlement Class in the manner approved by the Court in its Preliminary Approval Order. The Court finds that such Class Notice constitutes: (i) the best notice practicable to the Settlement Class under the circumstances; (ii) notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of this Action and the terms of the Settlement Agreement, their rights to exclude themselves from the Settlement or to object to any part of the Settlement, their rights to appear at the Final Fairness Hearing (either on their own or through counsel hired at their own expense), and the binding effect of the Final Order and the Final Judgment, whether favorable or unfavorable, on all persons who do not exclude themselves from the Settlement Class; (iii) due, adequate, and sufficient notice to all persons or entities entitled to receive notice; and (iv) notice that fully satisfies the requirements of the United States Constitution (including the Due Process Clause), Federal Rules of Civil Procedure 23(c)(2)(B) and 23(e)(1), and any other applicable law.

8.      Due and adequate notice of the proceedings having been given to the Settlement

Class and a full opportunity having been offered to Settlement Class Members to participate in the Final Fairness Hearing, it is hereby determined that all Settlement Class Members except those who timely opted out, as identified in Exhibit A to this Final Approval Order, are bound by this Final Approval Order and the Final Judgment. No Settlement Class Members, other than those listed in Exhibit A, are excluded from the Settlement Class, from the terms of the Settlement Agreement, or from the effect of this Final Approval Order and Final Judgment.

## FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

9.      Pursuant to Fed. R. Civ. P. 23(e), the Court hereby finally approves in all respects the Settlement as set forth in the Settlement Agreement and finds that the Settlement, the Settlement Agreement, the benefits to the Settlement Class Members, and all other parts of the Settlement are, in all respects, fair, reasonable, and adequate, and in the best interest of the Settlement Class, within a range that responsible and experienced attorneys could accept considering all relevant risks and factors and the relative merits of Plaintiffs' claims and any defenses of the Defendants, and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause, and the Class Action Fairness Act. Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement, with each Settlement Class Member bound by the Settlement Agreement, including any releases therein.

10.      Specifically, the Court finds that the Settlement is fair, reasonable, and adequate given the following factors, among other things:

        a.      This Action was complex and time consuming and would have continued to be so through summary judgment and/or trial if it had not settled;

        b.      The Defendants deny liability and have indicated their intent to continue

4

to defend the litigation vigorously had it not settled;

c.     Class Counsel had a well-informed appreciation of the strengths and weaknesses of the Action while negotiating the Settlement;

d.     The monetary and injunctive relief provided for by the Settlement is well within the range of reasonableness in light of the best possible recovery and the risks the Parties would have faced if the case had continued to verdicts as to jurisdiction, liability, and damages;

e.     The Settlement was the result of arm's-length good faith negotiations and exchange of information by experienced counsel;

f.     The reaction of the class to the Settlement has been positive, with only _____ consumers timely requesting to opt out and no objections to the Settlement [at the time of filing the motion].

11.     Accordingly, the Settlement shall be consummated in accordance with the terms and provisions of the Settlement Agreement.

## MONETARY CONSIDERATION AND INJUNCTICE RELIEF

12.     The Court approves the Parties' plan to distribute the Cash Awards provided for by the Settlement Agreement to Settlement Class Members as set forth in the Settlement Agreement.

13.     The Court also approves the agreements reached with respect to injunctive relief, as more particularly set forth in the Settlement Agreement (which shall control in the event of any alleged inconsistency with this Final Approval Order):

a.     The Tribal Officials will cancel (as a disputed debt) all loans originated Golden Valley Lending, Inc., Silver Cloud Financial, Inc., and Majestic Lake Financial, Inc.; as well as all loans originated by Mountain Summit Financial, Inc. prior to February 1, 2021.

5

b. The Tribal Officials will not sell, transfer or assign for collection any Outstanding Loans and that it will cease all direct or indirect collection activity on Outstanding Loans;

c. The Tribal Officials will return any funds inadvertently collected after March 3, 2022;

d. The Tribal Officials will not sell personal identifying information obtained from Settlement Class Members during the class period to third parties for any commercial purpose.

e. The Tribal Officials shall contact all consumer reporting agencies to which it previously had reported information regarding any Settlement Class Member and request permanent removal of any negative tradelines previously reported to consumer reporting agencies in the name of Golden Valley Lending, Inc., Silver Cloud Financial, Inc., and Majestic Lake Financial, Inc. regarding loans originated during the class period. A tradeline shall be considered "negative" if it indicates that any payment due was missed.

14. The relief provided by the Settlement is significant. All Settlement Class Members will receive a financial benefit in the form of a cash payment, tradeline deletion, loan cancellation, or restrictions on the sale of personal identifying information. In addition, the injunctive relief provided by the Settlement to all Settlement Class Members, regardless of their loan status, is significant. Defendants have also agreed not to sell or transfer any remaining unpaid accounts associated with Class Members from the Class Period, to cease all direct or indirect collection activity on Outstanding Loans, not to sell Class Members' personal identifying information obtained during the Class Period to certain third parties, that the loans from the Class Period are disputed debts, and to request removal of negative credit reporting

regarding certain loans from the Class Period.  These benefits to Class Members have significant value and are not included in the monetary amount payable to the Settlement Fund, but constitute real benefits for Settlement Class Members. Furthermore, Class members will receive these benefits without having to prove any harm or take any affirmative actions.  In other words, Class Members will not be required to submit any forms or claims for payment.

## DISMISSAL OF CLAIMS AND RELEASES

15.     This Action and all Released Claims of Settlement Class Members are hereby dismissed with prejudice and, except as otherwise provided herein or in the Settlement Agreement, without costs to any party.

16.     Pursuant to the Settlement Agreement, as of the Effective Date of this Settlement, the following releases shall be effective

a.      Each Named Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall have fully, finally, and forever released the Tribal Officials, their predecessors, and their successors, all in their official and individual capacities, and any of their trusts, trustees, heirs, assigns, lenders, insurers, reinsurers, and attorneys, of any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or

7

un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown that could have been brought against them by Settlement Class Members related in any way to loans executed with Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Majestic Lake Financial, Inc., or prior to February 1, 2021, Mountain Summit Financial, Inc.  .

      b.     Each Named Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Final Judgment and the Settlement Agreement shall have, fully, finally, and forever released and discharged Landy, Joshus S. Landy Revocable Trust, Joshus Landy Family Irrevocable Trust, Oceanside Breeze Holdings, LLC, Creative Hills Holdings, LLC, and Sunny Ridge Financial, LLC, individually and to the extent of their interests (directly or indirectly held) in any entity associated in any way with the four aforementioned loan companies (Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Majestic Lake Financial, Inc., or Mountain Summit Financial, Inc.), and each of their parents, subsidiaries, controlling entities, related entities, administrators, predecessors-in-interest, successors, reorganized successors, current and former owners, members (including, but not limited to, member funds), directors, officers, trusts, trustees, shareholders, employees, partners, contractors, joint-venturers, representatives, heirs, assigns, agents, lenders, insurers, reinsurers, and attorneys, from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies whether arising under local, state, tribal, foreign, territorial, or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule,

regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action.

        c.     Each Named Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Final Judgment and the Settlement Agreement shall have, fully, finally, and forever released and discharged Asner, Gortenburg, AG613, LLC, SIA Oil, LLC, Asner Family Holdings, LLC, Yukel Holdings, LLC, individually and to the extent of their interests (directly or indirectly held) in any entity associated in any way with the four aforementioned loan companies (Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Majestic Lake Financial, Inc., or Mountain Summit Financial, Inc.), and each of their parents, subsidiaries, controlling entities, related entities, administrators, predecessors-in-interest, successors, reorganized successors, current and former owners, members (including, but not limited to, member funds), directors, officers, trusts, trustees, shareholders, employees, partners, contractors, joint-venturers, representatives, heirs, assigns, agents, lenders, insurers, reinsurers, and attorneys, from any and all rights, duties, obligations, demands, actions, causes of action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies,

whether arising under local, state, tribal, foreign, territorial, or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action.

      d.      Each Named Plaintiff and each Settlement Class Member, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, shall be deemed to have, and by operation of the Final Judgment and the Settlement Agreement shall have, fully, finally, and forever released and discharged David Vittorand the David J. Vittor Trust, individually and to the extent of their interests (directly or indirectly held) in any entity associated in any way with the four aforementioned loan companies (Golden Valley Lending, Inc., Silver Cloud Financial, Inc., Majestic Lake Financial, Inc., or Mountain Summit Financial, Inc.), and each of their parents, subsidiaries, controlling entities, related entities, administrators, predecessors-in-interest, successors, reorganized successors, current and former owners, members (including, but not limited to, member funds), directors, officers, trusts, trustees, shareholders, employees, partners, contractors, joint-venturers, representatives, heirs, assigns, agents, lenders, insurers, reinsurers, and attorneys, from any and all rights, duties, obligations, demands, actions, causes of

action, liabilities, claims, grievances, suits, losses, damages, costs, fees, expenses, and controversies, whether arising under local, state, tribal, foreign, territorial, or federal law (including, without limitation, under any consumer protection or unfair and deceptive practices laws) or equity, whether by constitution, statute, rule, regulation, any regulatory promulgation, contract, tort, common law, or any other theory of action, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, matured or un-matured, contingent or fixed, accrued or unaccrued, punitive or compensatory, choate or inchoate, liquidated or unliquidated, based on any fact known or unknown, including without limitation those that arise out of or relate in any way to any or all of the claims, causes of action, acts, omissions, facts, matters, transactions, or occurrences that were or could have been directly or indirectly alleged, described, set forth, referred to, or asserted in the Action, as well as *Sherry Blackburn, et al. v. A.C. Israel Enterprises, Inc., et al.*, No. 3:22-cv-146 (E.D. Va.).

  e. As agreed in § 4.1(e) of the Settlement Agreement, none of the releases apply or shall be construed to release any claims or causes of action against A.C. Israel Enterprises, Inc., Richard Investors, LLC, Greg Warner, Ferrell Capital, LLC, Seville, Ltd., Monu Joseph, Joseph Investment, LLC, E Opportunities, LLC, Skye, LLC, Cabbage City, LLC, Kai Investments, LLC, Benjamin Gravley, Signal Light, LLC, Hymken, LP, George Kellner, Kellner Capital, LP, Jay Pack, Jeff Weiner, Amit Raizada, Spectrum Business Ventures, Raizada Group or any investor or shareholder in any of these entities, other than the individuals and entities released herein and in the Settlement Agreement.

### AWARD OF ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS

  17. At the conclusion of a successful class action, class counsel may apply to a court for an award of attorneys' fees. *See* Fed. R. Civ. P. 23(h). Pursuant to the Settlement Agreement

Class Counsel may request reasonable attorneys' fees and reimbursement of costs to be paid from the Fund, provided that the total amount of such request does not exceed one third of the Fund provided to Settlement Class Members under the Settlement Agreement.

18.     Because this is a common-fund case, it is appropriate to employ a percentage of the fund method for calculating a proper fee award. When a representative party confers a substantial benefit upon a class, counsel is entitled to attorneys' fees based on the benefit obtained. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). *See, e.g., Milbourne v. JRK Residential America, LLC*, No. 3:12-cv-861-REP (ED. Va. Jan. 4, 2017) (Doc. 324); *Mayfield v. Memberstrust Credit Union*, 3:07-cv-506-REP (E.D. Va. Nov. 7, 2008) (Doc. 22); *Conley v. First Tennessee*, 1:10-cv-1247-JFA (E.D. Va. Aug. 18, 2011) (Doc. 37); *Lengrand v. Wellpoint*, No. 3:11-cv-333-HEH (E.D. Va. Nov. 13, 2012) (Doc. 42).

19.     No Class Member or Government entity has objected to Class Counsel's request.

20.     The Court, having reviewed the declarations, exhibits, and points and authorities submitted in support of and opposition to Class Counsel's request for attorneys' fees and reimbursement of costs, approves the award of attorneys' fees and reimbursement of costs to Class Counsel in the amount of _____ ("Fee and Expense Award"). The Court finds that the Fee and Expense Award is reasonable and appropriate under all of the circumstances presented.

21.     The Settlement Agreement also provides that Plaintiffs may request a Service Award to be paid from the Fund, provided such awards do not exceed $10,000 to each Class Representative.

22.     Courts routinely grant service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation.

*See, e.g.*, *Manuel v. Wells Fargo Bank*, No. 3:14-cv-238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016) (explaining that service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general"). Here, the Court finds that the requested Service Awards are reasonable and within the range of awards granted by courts in this and other circuits. *See, e.g., id.* (approving $10,000 service award); *Ryals, Jr. v. HireRight Solutions, Inc.*, No. 3:09-cv-625 (JAG) (E.D. Va. Dec. 22, 2011) (awarding $10,000 service awards to each class representative). Moreover, these Service Awards are justified by the time and effort expended by the Class Representatives on behalf of the Settlement Class Members and the risk each assumed in bringing this action. Accordingly, the Court finds that each of the Class Representatives, George Hengle, Sherry Blackburn, Willie Rose, Elwood Bumbray, Tiffani Myers, Steven Pike, Sue Collins and Lawrence Mwethuku shall be awarded $10,000 for their efforts, to be paid from the Fund.

23.     The Court further notes that the percentage of requested attorneys' fees and reimbursement of costs and the dollar amount of the Service Awards was included in the notice materials disseminated to the Settlement Class.

24.     The award of attorneys' fees and costs and Service Awards shall be paid by the Defendants from the Fund as agreed in § 3.4(b)(iii) of the Settlement Agreement.

25.     The Parties' distribution plan of payments to the Class Members in *pro rata* allocations of the Settlement Fund, following the above approved deductions, is approved for implementation.  Should funds remain after all distributions are made, and the check negotiation period provided for in the Settlement Agreement has passed, the Parties' chosen *cy pres,*

National Consumer Law Center, a nonprofit organization, is approved for receiving such balance.

## OTHER PROVISIONS

26.     The Court has jurisdiction to enter this Final Order and Final Judgment. Without in any way affecting the finality of this Final Order or the Final Judgment, this Court expressly retains exclusive and continuing jurisdiction over the Settlement and the Settlement Agreement, including all matters relating to the administration, consummation, validity, enforcement, and interpretation of the Settlement Agreement or the Final Order and Judgment, including, without limitation, for the purpose of:

a.      enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, the Final Order, or the Final Judgment (including, whether a person or entity is or is not a Settlement Class Member);

b.      entering such additional orders, if any, as may be necessary or appropriate to protect or effectuate the Final Order, the Final Judgment, or the Settlement Agreement, or to ensure the fair and orderly administration of the Settlement; and

c.      entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction over the Settlement Agreement, the Final Order, or the Final Judgment.

27.     Without affecting the finality of this Final Order or the Final Judgment, the Defendants, each Settlement Class Member, and the Class Administrator hereby irrevocably submit to the exclusive jurisdiction of the Court for the limited purpose of any suit, action,

14

proceeding, or dispute arising out of the Settlement Agreement or the applicability of the Settlement Agreement, including any suit, action, proceeding, or dispute relating to the Release provisions herein.

28.     The Parties are hereby directed to carry out their obligations under the Settlement Agreement.

29.     Without further order of the Court, the Parties may agree to reasonably necessary extensions of time to carry out any of the provisions of the Settlement Agreement. Likewise, the Parties may, without further order of the Court or notice to the Settlement Class, agree to and adopt such amendments to the Settlement Agreement (including exhibits) as are consistent with this Final Order and the Final Judgment and that do not limit the rights of Settlement Class Members under the Settlement Agreement.

30.     In the event that the Settlement becomes null and void, certification of the Settlement Class shall be automatically vacated and this Final Approval Order and Final Judgment, as well as all other orders entered and releases delivered in connection with the Settlement Agreement, shall be vacated and shall become null and void, shall be of no further force and effect, and the Parties' rights and defenses shall be restored, without prejudice, to their respective positions as if the Settlement Agreement had never been executed.

31.     This Final Approval Order and Final Judgment is final for purposes of appeal and may be appealed immediately, and the Clerk is hereby directed to enter judgment thereon and **THIS CAUSE IS ENDED.**

**IT IS SO ORDERED.**

Dated: _____

_____
Hon. David J. Novak
United States District Court Judge

# Exhibit 4

*UNITED STATES DISTRICT COURT*
*EASTERN DISTRICT OF VIRGINIA*
Case No. 3:19-cv-250

# EXCLUSION REQUEST FORM
**Must be postmarked by XXXX**



**THIS IS NOT A CLAIM FORM. This form removes you from the settlement.  If you submit this form, you will not be eligible for any benefits pursuant to the settlement, including a cash payment.**

COMPLETE AND RETURN THIS FORM BY XXXX only if you do **not** want to be part of the settlement of this case, or if you intend to file a separate lawsuit on your own for the claims alleged in this class action case. The attorneys who represent the class do not represent you with respect to any such claims if you exclude yourself.

BY COMPLETING THIS FORM, you are **excluding** yourself from participation in the settlement in this case, you will not receive any money if you are entitled.  If you submit this form and want to obtain any money you will then have to file your own lawsuit. You may need to retain your own attorney. You must file your own lawsuit before time runs out to do so and you should consult your own attorney to make certain you file a complaint in the appropriate court within the time provided by the applicable statutes of limitations.

| **Section I: Exclusion** |
| --- |
| ☐    I request to be excluded from the Class Settlement in *Hengle et al. v. Asner et al.*, No. 3:19-cv-250 (E.D. Va.). |

| **Section II: Contact Information** |
| --- |
| Full Name: _____<br><br>Current Address: _____<br><br>_____<br><br>_____<br><br>Phone Number: _____<br><br>Last Four Digits of SSN: _____ |

| **Section III: Signature** |
| --- |
| Signature: _____<br><br>Date: _____ |

Exclusion Request Forms must be mailed to:

Hengle Settlement
c/o Settlement Administrator
P.O. Box XXXX
City, State XXXXX